UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LA MAR GUNN,                                        :

                  Plaintiff,              :

           - against -                   :

AMBAC ASSURANCE CORPORATION; AND          11 Civ. 5497 (PAC) (JLC)
EQCC HOME EQUITY LOAN TRUST 1998-2
DATED 6.1.98 (CUSIP NO. 268917EN7);        :
EQCC HOME EQUITY LOAN TRUST 1998-3
DATED 9.1.98 (CUSIP NO. 268917EV9),        :

              Defendants.             :

                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT AMBAC ASSURANCE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

PATTERSON BELKNAP WEBB & TYLER LLP
Robert P. LoBue (rplobue@pbwt.com)
Harry Sandick (hsandick@pbwt.com)
Melissa O'Neill (moneill@pbwt.com)
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

*Attorneys for Ambac Assurance Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .................................................................................................3

    A.  Gunn's Claim To The Property Is Rejected When He Intervenes In U.S. Bank's
        Foreclosure Action in Delaware State Court....................................................3

    B.  Gunn's Delaware State Court Action Against U.S. Bank and Select Portfolio Servicing Is
        Also Dismissed...........................................................................................6

    C.  Gunn Files The Instant Action In An Effort To Undo His State Court Defeats .................8

    D.  The Securitization Transactions And Ambac's Limited Role As The Financial Guarantee
        Insurer......................................................................................................8

ARGUMENT ....................................................................................................10

I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
     JURISDICTION ..........................................................................................10

    A.  Standard For Dismissal For Lack of Subject Matter Jurisdiction ......................10

    B.  Plaintiff's Claims Are Barred By The *Rooker-Feldman* Doctrine....................10

II.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE GUNN'S CLAIMS ARE
     BARRED BY COLLATERAL ESTOPPEL .........................................................13

III. GUNN'S CLAIMS OF CIVIL RICO, FRAUD AND CIVIL CONSPIRACY SHOULD
     ALSO BE DISMISSED AS TIME-BARRED .....................................................15

IV. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
     CLAIM ....................................................................................................15

    A.  Legal Standard For Granting A Motion To Dismiss For Failure To State A Claim.........16

    B.  Gunn's RICO Claim Must Be Dismissed As Legally Insufficient And Factually
        Implausible ...........................................................................................17

        1.  The Elements of Civil RICO.........................................................17

        2.  Gunn's Civil RICO Claim Should Be Dismissed Because He Lacks Standing .........18

        3.  Gunn's Civil RICO Claim Should Be Dismissed Because He Fails To Allege a
            Pattern of Racketeering Activity With The Requisite Particularity............................19

    C.  Gunn's Fraud Claim Must Be Dismissed.......................................................22

    D.  Gunn's Civil Conspiracy Claim Should Be Dismissed.....................................23

    E.  Plaintiff Fails To State a Claim For Malicious Prosecution...............................24

CONCLUSION...................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

CASES

*Andino v. Fischer,*
    698 F. Supp. 2d 362 (S.D.N.Y. 2010).............................................................. 16-17

*Atlantis Plastics Corp. v. Sammons,*
    558 A.2d 1062 (Del. Ch. 1989)...........................................................................15

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006).............................................................................................19

*Ashby v. Polinsky,*
    06-CV-6778, 2007 WL 608268 (E.D.N.Y. Feb. 22, 2007), ), *aff'd*, 328 Fed. Appx. 20,
    21 (2d Cir. 2009)..................................................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009)......................................................16, 22, 23

*Bernstein v. Misk,*
    948 F. Supp. 228 (E.D.N.Y. 1997) .....................................................................21

*Betts v. Townsends, Inc.,*
    765 A.2d 531 (Del. 2000) ...................................................................................14

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
    369 F.3d 212 (2d Cir. 2004)................................................................................16

*Casio Computer Co. v. Sayo,*
    No. 98 Civ. 3772(WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) .................20

*Chestnut v. Wells Fargo Bank, N.A.,*
    10-CV-4244, 2011 WL 838914 (E.D.N.Y. Mar. 2, 2011).....................................12

*Dist. of Columbia Court of Appeals v. Feldman,*
    460 U.S. 462 (1983)............................................................................................10

*Done v. Option One Mortgage,*
    09-CV-4770, 2011 WL 1260820 (E.D.N.Y. Mar. 30, 2011)................................13

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)............................................................................................20

*ECA v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................22

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)............................................................................11

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
    624 F.3d 106 (2d Cir. 2010)................................................................16

*Feinstein v. Chase Manhattan Bank*,
    06-CV-1512, 2006 WL 898076 (E.D.N.Y. Apr. 5, 2006) ......................12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)................................................................21

*Giannone v. York Tape & Label, Inc.*,
    548 F.3d 191 (2d Cir. 2008)................................................................13

*Gray v. Americredit Fin. Servs., Inc.*,
    No. 07 Civ. 4039, 2009 WL 1787710 (S.D.N.Y. Jun. 23, 2009)............12

*Green v. Mattingly*,
    585 F.3d 97 (2d Cir. 2009)..................................................................11

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)..................................................................16

*Hemi Group, LLC v. City of New York*,
    130 S. Ct. 983 (2010).....................................................................18, 19

*Hoblock v. Albany County Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005)..................................................................11

*In re Rehabilitation of Segregated Account of Ambac Assurance Corp.*,
    782 F. Supp. 2d 743 (W.D. Wis. 2011) ..................................................8

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
    386 F.3d 107 (2d Cir. 2004)................................................................10

*Kalamas v. Consumer Solutions Reo, LLC*,
    09-CV-5045, 2010 WL 4811894 (E.D.N.Y. Nov. 17, 2010) ..................12

*Kaye v. Pantone, Inc.*,
    395 A.2d 369 (Del. Ch. 1978)..............................................................24

*Koch v. Christie's Int'l, PLC*,
    785 F. Supp. 2d 105 (S.D.N.Y. 2011) ..................................................15

5031877v.1

*Kropelnicki v. Siegel,*
  290 F.3d 118 (2d Cir. 2002)..................................................................................11

*Kuroda v. SPJS Holdings, LLC,*
  971 A.2d 872 (Del. Ch. 2009)...............................................................................23

*LaFlamme v. Société Air France,*
  702 F. Supp. 2d 136 (E.D.N.Y. 2010) ..................................................................16

*Lerner v. Fleet Bank, N.A.,*
  459 F.3d 273 (2d Cir. 2006)..................................................................................22

*Leung v. Law,*
  387 F. Supp. 2d 105 (E.D.N.Y. 2005) ..................................................................20

*Luckett v. Bure,*
  290 F.3d 493 (2d Cir. 2002)..................................................................................10

*M.G. Bancorporation v. Le Beau,*
  737 A.2d 513 (Del. 1999)......................................................................................13

*Mills v. Polar Molecular Corp.,*
  12 F.3d 1170 (2d Cir. 1993)..................................................................................21

*Moore v. PaineWebber, Inc.,*
  189 F.3d 165 (2d Cir. 1999)..................................................................................21

*Motorola Credit Corp. v. Uzan,*
  322 F.3d 130 (2d Cir. 2003)..................................................................................18

*NACCO Indus., Inc. v. Applica Inc.,*
  997 A.2d 1 (Del. Ch. 2009)...................................................................................23

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.,*
  165 F. Supp. 2d 514 (S.D.N.Y. 2001)..................................................................18

*Nix. v. Sawyer,*
  466 A.2d 407 (Del. Super. Ct. 1983) ....................................................................24

*O'Connor v. Pierson,*
  568 F.3d 64 (2d Cir. 2009)....................................................................................13

*Parra v. Greenpoint Mortgage Co.,*
  01-CV-02010, 2002 WL 32442231 (E.D.N.Y. Mar. 26, 2002), *aff'd,* 53 Fed. Appx.
  164 (2d Cir. 2002)..................................................................................................12

*Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,*
  101 F.3d 900 (2d Cir. 1996)..............................................................................17-18

iv

*Puig v. Seminole Night Club, LLC,*
    C.A. No. 5495–VCN, 2011 WL 3275948 (Del. Ch. July 29, 2011)........................................15

*Ramunno v. Cawley,*
    705 A.2d 1029 (Del. Super. Ct. 1998) ..................................................................................23

*Rooker v. Fidelity Trust Co.,*
    263 U.S. 413 (1923)......................................................................................................... 10-11

*Spool v. World Child Int'l Adoption Agency,*
    520 F.3d 178 (2d Cir. 2008)..................................................................................................19

*Spoto v. Herkimer County Trust,*
    No. 99-CV-1476, 2000 WL 533293 (N.D.N.Y. Apr. 27, 2000)..............................................18

*Stephenson v. Capano Dev., Inc.,*
    462 A.2d 1069 (Del. 1983) ...................................................................................................22

*Swiatkowski v. Citibank,*
    745 F. Supp. 2d 150 (E.D.N.Y. 2010) ..................................................................................12

*Transched Sys. Ltd. v. Versyss Transit Solutions, LLC,*
    2008 WL 948307 (Del. Super. Ct. Apr. 2, 2008)..................................................................23

*Triestman v. Fed. Bureau of Prisons,*
    470 F.3d 471 (2d Cir. 2006)..................................................................................................16

*United States v. Thorn,*
    446 F.3d 378 (2d Cir. 2006)..................................................................................................20

*Webster v. Wells Fargo Bank, N.A.,*
    No. 08 Civ. 10145, 2009 WL 5178654 (S.D.N.Y. Dec. 23, 2009)..........................................12

*Williams v. Aztar Indiana Gaming Corp.,*
    351 F.3d 294 (7th Cir. 2003) ................................................................................................18


**STATUTES**

18 U.S.C. § 1956...................................................................................................................20

18 U.S.C. § 1961(5) ..............................................................................................................19

18 U.S.C. § 1962..............................................................................................................17, 19

18 U.S.C. § 1964(c) ..............................................................................................................19

v

28 U.S.C. § 1257 ..................................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ..........................................................................................20, 21

Fed. R. Civ. P. 9(b) ......................................................................................20, 21, 22

Fed. R. Civ. P. 12(b)(1) ......................................................................................10

Fed. R. Civ. P. 12(b)(6) ......................................................................................16

5031877v.1

Defendant Ambac Assurance Corporation ("Ambac") moves to dismiss the Complaint of *pro se* Plaintiff La Mar Gunn ("Gunn" or "Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint should be dismissed in its entirety and with prejudice because (1) this Court lacks subject matter jurisdiction, (2) Gunn is collaterally estopped from bringing this action, (3) most of Gunn's claims are time-barred, and (4) Gunn's Complaint fails to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

For more than seven years now, La Mar Gunn has tried to block or undo the foreclosure on real property (the "Property") located at 201 Cornwell Drive in Bear, Delaware, a suburb of Wilmington. Over and over again, Delaware courts at every level have rejected Gunn's efforts to prevent foreclosure on the Property. The judge who presided over one of these prior actions ultimately concluded after more than five years of litigation that Gunn was "not proceeding in good faith" but instead was "using the courts to maneuver for advantage." *See U.S. Bank Nat'l Ass'n v. Johnson*, No. 02L-07-075, 2010 WL 705723, at *3 (Del. Super. Ct. Feb. 25, 2010) ("*Gunn I*" or the "Foreclosure Action"), *aff'd sub nom.*, No. 102, 2009D, 2010 WL 2606343 (Del. June 30, 2010) ("*Gunn II*").[1]

Gunn's new lawsuit filed in this Court is a continuation of his persistent efforts to use litigation to obtain an improper advantage in seeking to defeat foreclosure. This time, Gunn's target is Ambac, a party that was completely uninvolved in any of the events relating to the foreclosure on the Property. In Gunn's very short Complaint, he casually makes the most serious allegations, accusing Ambac of "fraud," "racketeering," and "money laundering." Gunn insists that he is entitled to the most dramatic forms of relief, such as "punitive damages" and a

---

[1] For the convenience of the Court, we have provided these two unpublished decisions to the Court as Exhibits A and B to the Declaration of Melissa O'Neill, dated November 16, 2011 (the "O'Neill Declaration"). All references to exhibits in this Memorandum of Law are references to the exhibits appended to the O'Neill Declaration.

"temporary restraining order." But all of those terms are just smoke and mirrors deployed to disguise the lack of any legal merit in Gunn's claims and the absence of any connection between Ambac and Gunn.

Gunn makes his over-the-top allegations and demands in the hope of persuading this Court to allow him to continue to litigate the same issue that he already lost – twice – in Delaware state court. This Court should decline to provide Gunn with a new forum to raise his old claims. Gunn already has failed twice before to invalidate the foreclosure and sale of the Property – a home he acquired through a quitclaim deed subject to, and with full knowledge of, a defaulted mortgage and foreclosure proceedings. Gunn's third attempt should fare no better than his prior two lawsuits, for multiple independently sufficient reasons. There is no subject matter jurisdiction in this Court due to the *Rooker-Feldman* doctrine that prohibits federal district courts from re-doing the work of state courts. Likewise, the rule of collateral estoppel also compels immediate dismissal. Gunn's claims also should be dismissed for a failure to state a claim. The allegations in the Complaint are so bare-boned and poorly pled that it is difficult even to identify Gunn's causes of action. Finally, to the extent he attempts to plead claims of civil RICO, fraud, and civil conspiracy, these claims should be dismissed as time-barred.

Given the nature of Ambac's business, it should come as no surprise that Gunn is unable to meet basic pleading requirements for the bold causes of actions of RICO, fraud, civil conspiracy, or malicious prosecution hinted at in the Complaint. Ambac was not a party to, and had no involvement with, the foreclosure action against the Property in Delaware. Rather, Ambac is a financial guarantee insurance company whose business includes the issuance of financial guarantee insurance policies on investment-grade municipal finance and private structured-finance debt obligations, such as residential mortgage-backed securities. To the

5031877v.1

extent that investors who purchase such securities do not receive the payments of principal and interest that they are owed, Ambac is obliged to make claims payments to certain classes of insured noteholders.  But Ambac has no involvement with the origination, sale or servicing of individual mortgages, and plays no part in the filing or recording of deeds, assignments of notes, servicing of loans, or foreclosure actions.  One only can assume that Gunn is suing Ambac now simply because there is no one else left to sue.

In short, the Complaint is nothing more than another effort by Gunn to obtain an improper advantage through the litigative process, this time by suing a complete bystander to the foreclosure on the Property that Gunn continues to challenge and thereby casting doubt on the validity of the now-concluded proceedings in Delaware.  For any or all of the reasons discussed below, the Complaint should be dismissed as a matter of law and with prejudice.

## BACKGROUND

### A.    Gunn's Claim To The Property Is Rejected When He Intervenes In U.S. Bank's Foreclosure Action in Delaware State Court

The long procedural history that is prologue to this federal lawsuit began on November 21, 1997, when two individuals named Leisa J. Johnson and Robert L. Johnson (the "Johnsons") obtained a mortgage from EquiCredit Corporation that was secured by the Property.[2]  *See Gunn I*, 2010 WL 705723, at *1.  On April 22, 1998, the Johnsons obtained a second mortgage on the Property from Colonial Mortgage Group, LLC.  *Id.*

At some point, the Johnsons' first lien mortgage was assigned to a securitization trust for which U.S. Bank, N.A. ("U.S. Bank") served as the trustee.[3]  In May 2001, the Johnsons

---

[2]  This recitation of the underlying procedural history is drawn from the prior decisions in the Delaware state court.

[3]  The Delaware court that presided over the Foreclosure Action stated in its opinion that "[a]ccording to the parties," the assignment of the mortgage to the securitization trust was on September 30, 2002, which would have been subsequent to the foreclosure.  *Gunn I*, 2010 WL 705723, at *1.  This is irrelevant for purposes of this motion to dismiss.

3

defaulted on their first mortgage and on July 19, 2002, U.S. Bank, acting as the trustee, foreclosed on the mortgage. *Id.* On August 29, 2002, a default judgment was entered against the Johnsons in the Foreclosure Action brought by U.S. Bank in the Superior Court of Delaware, New Castle County. *Id.* On June 30, 2003, U.S. Bank acted to enforce the default judgment through a sheriff's sale of the Property, but this sale was stayed when the Johnsons filed for bankruptcy on August 11, 2003.

In November 2003, despite knowing that the first lien mortgage loan was in default and in foreclosure, Gunn purchased the Property from the Johnsons by quitclaim deed. *Id.* A quitclaim deed is an instrument used to transfer real property that gives the grantee no assurance that the grantor holds good title to the property. Due to the lack of a promise about good title, a quitclaim deed is not commonly used in an arms-length transaction to sell real property for value. Gunn also purchased the second-lien mortgage on the Property. *Id.*

In October 2004, the bankruptcy court lifted the stay on the sheriff's sale of the Property, but Gunn filed a motion in the Foreclosure Action to stay the sheriff's sale. *Id.* The motion was granted on December 14, 2004 and over the following four years, Gunn repeatedly filed motions to stay the sheriff's sale. *Id.* at *1-2. The Superior Court granted seven motions to stay the sheriff's sale until finally the Delaware state court lost its patience with Gunn and permitted the sale to proceed on December 9, 2008. *Id.* at *2.

On January 8, 2009, Gunn again filed a motion to set aside the sheriff's sale and to intervene in the Foreclosure Action. *Id.* The court granted Gunn's motion to intervene (this was a mere formality given that Gunn already had been litigating the matter for more than five years) but denied his motion to set aside the sheriff's sale, stating that "the court is satisfied that the movant is estopped from challenging U.S. Bank's bona fides as assignee for the first

4

mortgage holder." *Id.* The Superior Court also denied Gunn's request for discovery, including Gunn's request to depose U.S. Bank. *See id.*

Gunn appealed this decision to the Supreme Court of Delaware. On December 1, 2009, the Supreme Court of Delaware remanded the case to the Superior Court to permit Gunn to conduct discovery concerning the assignment of the Property to U.S. Bank. *Id.* However, after remand, Gunn failed to take any discovery of U.S. Bank. *Id.* at *3.

Given Gunn's failure to conduct discovery – which was the only basis for the remand by the Delaware Supreme Court – the Superior Court held on February 25, 2010 that U.S. Bank was a bona fide assignee and ruled that the sheriff's sale of the Property would not be set aside. *Id.* This brought the Foreclosure Action to a close after nearly eight years of litigation. In the course of finally rejecting Gunn's claim, the Superior Court reached the following conclusions:

- U.S. Bank was properly assigned the Johnsons' mortgage.

- Gunn knew that he was buying a property with a first-lien mortgage and had actual knowledge that the first mortgage was in default.

- Gunn blocked U.S. Bank from selling the Property, as was its right, for seven-and-one-half years after the first mortgage went into default.

*Id.*

Before dismissing Gunn's claim, the court also took care to characterize Gunn's conduct throughout the lawsuit. The court stated that it saw "nothing in the papers submitted on remand that dispels the belief that *Gunn is not proceeding in good faith.* Rather, he seems to be

using the courts to maneuver for advantage."[4]  *Id.* (emphasis added).  On June 30, 2010, the

Supreme Court of Delaware affirmed the decision.  *Gunn II*, 2010 WL 2606343, at *1.

   Following the Supreme Court's affirmance of the foreclosure decision, the

Superior Court granted U.S. Bank a writ of possession on November 12, 2010 allowing it to take

possession of the Property.  *See Gunn v. U.S. Bank Nat'l Ass'n*, No. 742, 2010, 2011 WL

2090203, at *1 (Del. May 26, 2011) ("*Gunn III*") (Ex. C).  Plaintiff again appealed to the

Delaware Supreme Court, arguing, *inter alia*, that U.S. Bank did not have standing to bring the

foreclosure action and that U.S. Bank is not the bona fide assignee of the property.  *Id.*  On May

26, 2011, the Supreme Court affirmed the lower court's decision, holding that Plaintiff's claims

were barred under the "law of the case" doctrine, which "bars re-litigation of any claim that has

been previously decided by this Court in the same proceeding."  *Id.* at *1-2.

  **B.**  **Gunn's Delaware State Court Action Against U.S. Bank and Select Portfolio Servicing Is Also Dismissed**

   On April 13, 2009, while the Foreclosure Action was still pending, Gunn brought

a separate lawsuit in the Superior Court of Delaware, New Castle, related to the Property.  In this

new action, captioned as *Gunn v. Select Portfolio Servicing, Inc.*, Case No. 09C-04-102 (Ex. D)

(the "Conversion Action"), Plaintiff asserted claims against Defendants U.S. Bank and Select

Portfolio Servicing ("SPS") for conversion, fraud, bad faith banking practices, breach of

contract, and violations of the Fair Debt Collection Practices Act ("FDCPA") and the Real Estate

Settlement Procedures Act ("RESPA").

   On November 12, 2010, the court ruled from the bench and dismissed all of

Gunn's claims in the Conversion Action.  The court stated that all of Gunn's claims, apart from

---

[4] In a footnote, the Superior Court recognized that Gunn's true intention was to win control of the Property notwithstanding the fact that others had a superior right to it. "Gunn, *pro se*, filed an action in the Court of Common Pleas to knock out a Wachovia loan . . . . [T]he combined effect of Gunn's proceedings is to acquire the property free and clear of all mortgages." *Gunn I*, 2010 WL 705723, at *3 n.3.

5031877v.1

his fraud claim, "fail because [Gunn] was not a party to or participant in the original loan transaction. The loan was taken out by the Johnsons. Gunn is an intervenor, having purchased the property subject to a lien of record and while it was in default . . . is not the proper plaintiff to raise those claims." (Ex. E at 3:14-22 and 4:4-5). The court rejected the allegation of conversion because the Property had not yet changed hands. (Ex. E at 4:14-5:1). Finally, the court held that "the fraud [claim] really has not been pled properly" and observed that U.S. Bank's right to foreclosure had already been litigated unsuccessfully by Gunn. The court explained that "[t]his new litigation . . . mostly consisted of Mr. Gunn's challenging the foreclosing party's title to the loan. And although he claims fraud and worse, he's not demonstrated that there's any fraud and the bank has presented papers tending to show that it does have the title." (Ex. E at 5:19-6:3). In a short letter to the parties, the court summarized its ruling, explaining that (1) Gunn failed to state a claim with respect to any of his causes of action except for his fraud claim, (2) the fraud claim was not pleaded with particularity; and (3) Gunn was "collaterally estopped" from challenging the foreclosure because it had been already litigated. (Ex. F at 2).[5]

Gunn also appealed this decision to the Supreme Court of Delaware, which affirmed and held that "the same basic claim asserted in the instant appeal has been unsuccessfully asserted by Gunn in two prior appeals in this Court. Gunn's claim is, therefore, barred in this proceeding as *res judicata*." *Gunn v. Select Portfolio Servicing, Inc.*, No. 750, 2010, 2011 WL 2362110, at *1 (Del. June 13, 2011) (Ex. G).

---

[5] Some of the proceedings in the Conversion Action appear to have been conducted in tandem with proceedings in the Foreclosure Action. For example, in the same November 12, 2010 proceeding at which the Conversion Action was dismissed, the Court also granted the writ of possession sought by U.S. Bank. (Ex. F at 1).

C. **Gunn Files The Instant Action In An Effort To Undo His State Court Defeats**

Having extensively but unsuccessfully challenged the foreclosure of the Property in the Delaware state courts, Gunn now brings this *pro se* action against Ambac, and Defendants EQCC Home Equity Loan Trust 1998-2 and EQCC Home Equity Loan Trust 1998-3 (together, the "EQCC Trusts"), again seeking to invalidate the foreclosure on the Property.[6] This action was filed on July 26, 2011, just six weeks after the Supreme Court of Delaware affirmed the dismissal of Gunn's second lawsuit.

It is difficult to understand the precise nature of Gunn's grievance with Ambac. It appears he blames Ambac for the foreclosure of the Property, but none of the factual allegations are pleaded in any detail, nor does he allege that particular events occurred at particular times. Read generously, the Complaint attempts to allege claims for (1) RICO violations, (2) fraud, (3) civil conspiracy, and (4) malicious prosecution. (Compl. at 3-4). Gunn seeks the following relief: (1) a temporary injunction "prohibiting the continued violation of New York trust laws," (2) a declaratory judgment that the "actions of fabricating note assignments to deprive one of his property is fraud and any judgments procured through such fraud is void ab initio," (3) a temporary restraining order preventing the sale of the Property, (4) compensatory damages, and (5) punitive damages. (Compl. at 4).

D. **The Securitization Transactions And Ambac's Limited Role As The Financial Guarantee Insurer**

As a financial guarantee insurer, one type of financial obligation that Ambac insures is a residential mortgage-backed security.[7] Residential mortgage-backed securities are

---

[6] Ambac neither owns nor controls the EQCC Trusts, either directly or indirectly, and Ambac makes no arguments on their behalf with respect to this pending federal action.

[7] For a short discussion of Ambac's insurance business and Ambac's recent setbacks, *see generally In re Rehabilitation of Segregated Account of Ambac Assurance Corp.*, 782 F. Supp. 2d 743, 745 (W.D. Wis. 2011).

created when the sponsor of a securitization aggregates thousands of mortgage loans into one or more pools. The sponsor then sells those pools of loans to a trust that the sponsor created for the securitization transaction. The trust, in turn, issues securities – certificates or notes – that are to be paid down from the cash flow from the pooled mortgage loans. Financial guarantee insurance has been used to enhance the marketability of the certificates or notes, because it was reassuring to investors to know that an insurance company would guarantee payment on the certificates or notes if the cash flow generated by the underlying mortgage collateral was insufficient to fund the payments owed to investors.

Given the nature of Ambac's business, it is implausible that Ambac would have had any involvement in the foreclosure on the Property, and no such involvement is asserted as a matter of fact in the Complaint. Whether that foreclosure was appropriate or not, Ambac had nothing whatsoever to do with it. In this case, Ambac provided financial guarantee insurance for the benefit of the investors who bought securities that were issued by the two trusts named as co-defendants in this action: EQCC Home Equity Loan Trust 1998-2 and EQCC Home Equity Loan Trust 1998-3.[8]

In short, Ambac's role was limited to the provision of financial guarantee insurance for the transaction. There is no allegation in the Complaint to suggest any larger role played by Ambac. Ambac did not originate the loan made to the Johnsons. Ambac did not service that loan. Nor did Ambac serve as trustee for the two EQCC Trusts; that role was played

---

[8] We have attached the publicly-filed Prospectus Supplements for each transaction as Exhibits H and I to the O'Neill Declaration. The Prospectus Supplement for EQCC Home Equity Loan Trust 1998-2 is dated June 23, 1998 and it provides that "[o]n or before the issuance of the Certificates, the Servicers will obtain from Ambac Assurance Corporation (the "Insurer") a securities guaranty surety bond in favor of the Trustee for the benefit of the Certificateholders relating to the Class A Certificates (the "Securities Insurance Policy"). The Securities Insurance Policy will, subject to its terms, provide for 100% coverage of the Class A Remittance Amount (as defined herein) due on the Class A Certificates on each Payment Date." (Ex. H. at S-2 (p. 3 of pdf)). The Prospectus Supplement for EQCC Home Equity Loan Trust 1998-3, which is dated September 10, 1998, contains a similar description of Ambac's role in the transaction. (Ex. I at S-2 (p. 3 of pdf)).

9

by U.S. Bank.  Indeed, Ambac had no contact or dealings with the borrowers whose mortgages

were owned by the EQCC Trusts, like the Johnsons.  Nor did Ambac have any contact with

Gunn.

**ARGUMENT**

I.   **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

Gunn is evidently dissatisfied with his multiple defeats in Delaware state court

and he now is attempting to re-litigate in federal court the very issue disposed of in those prior

lawsuits:  his entitlement to the Property.  However, federal district courts do not pass judgment

on final state court decisions.  The Complaint should be dismissed pursuant to Rule 12(b)(1)

because the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

A.   **Standard For Dismissal For Lack of Subject Matter Jurisdiction**

In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court

"must accept as true all material factual allegations in the complaint, but [is] not to draw

inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386

F.3d 107, 110 (2d Cir. 2004).  Additionally, a court "may consider affidavits and other materials

beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or

hearsay statements contained in the affidavits." *Id.*  Plaintiff has the burden of proving subject

matter jurisdiction by a preponderance of the evidence. *Luckett v. Bure,* 290 F.3d 493, 497 (2d

Cir. 2002).

B.   **Plaintiff's Claims Are Barred By The *Rooker-Feldman* Doctrine**

Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter

jurisdiction over claims that seek to challenge state court judgments. *See Dist. of Columbia*

*Court of Appeals v. Feldman,* 460 U.S. 462, 486-87 (1983); *Rooker v. Fidelity Trust Co.,* 263

10

U.S. 413, 415-16 (1923). "'Underlying the *Rooker-Feldman* doctrine is the principle, expressed

by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court

may review state-court decisions.'" *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009)

(quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

The doctrine bars "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Second Circuit has identified the four

elements that must be satisfied in order for the *Rooker-Feldman* doctrine to apply:

> First, the federal-court plaintiff must have lost in state court.
> Second, the plaintiff must complain of injuries caused by a state-
> court judgment. Third, the plaintiff must invite district court
> review and rejection of that judgment. Fourth, the state-court
> judgment must have been rendered before the district court
> proceedings commenced — *i.e.*, *Rooker-Feldman* has no
> application to federal-court suits proceeding in parallel with
> ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (alterations and internal quotation marks omitted).[9]

All four factors are satisfied, requiring dismissal of Gunn's lawsuit. First, Gunn

repeatedly failed to prevent and then to invalidate the foreclosure on, and the sale of, the

Property in two separate state court actions, making him the loser in state court. Second, the

underlying injury that he complains of is the foreclosure on his Property that was ordered by the

Delaware state court. Third, Gunn is requesting that this Court review and reject the state court

judgment. His prayer for relief asks that this Court issue a temporary restraining order

---

[9] Application of the *Rooker-Feldman* doctrine is not limited to those claims that were "actually litigated" in state court; rather, the doctrine extends to bar litigation of those claims that are "inextricably intertwined" with a prior state court determination. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). "A claim is inextricably intertwined under *Rooker-Feldman* when 'at a minimum, . . . a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), . . . [and] the claim . . . would be barred under the principles of preclusion.'" *Id.* (internal citation omitted).

11

preventing the sale of the Property and also seeks a declaratory judgment that the state court decision is void. Finally, Gunn filed the instant Complaint after the second of two state court decisions became final, so this is not a case of parallel litigation. Accordingly, this Court lacks subject matter jurisdiction over the Complaint.

Decisional law in the specific context presented by Gunn's lawsuit also strongly supports dismissal. "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08 Civ. 10145 (LAP), 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (quoting *Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009)); *see also Chestnut v. Wells Fargo Bank, N.A.*, 10-CV-4244, 2011 WL 838914, at *2 (E.D.N.Y. Mar. 2, 2011).[10]

The district court's decision in *Webster v. Wells Fargo Bank* is particularly instructive here. That case involved mortgagors who attempted to prevent a foreclosure action in New York Supreme Court, lost the case, and thereafter brought a federal action for fraud seeking to collaterally attack the foreclosure judgment. *Webster*, 2009 WL 5178654, at *2-3. Chief Judge Preska turned aside the fraud claims because "although Plaintiffs' legal theory sounds in fraud, the harm they seek to remedy is in fact the New York Supreme Court's judgment permitting foreclosure to proceed," rendering the Court without "jurisdiction either to overturn the New York Supreme Court's decision or to compensate Plaintiffs for Wells Fargo's foreclosure pursuant thereto." *Id.* at *6.

---

[10] This proposition stated by Chief Judge Preska in *Webster* is supported by abundant decisional law. *See, e.g., Kalamas v. Consumer Solutions Reo, LLC*, 09-CV-5045, 2010 WL 4811894, at *6 (E.D.N.Y. Nov. 17, 2010); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 163-168 (E.D.N.Y. 2010); *Gray v. Americredit Fin. Servs., Inc.*, No. 07 Civ. 4039, 2009 WL 1787710, at *3-4 (S.D.N.Y. June 23, 2009); *Ashby v. Polinsky*, 06-CV-6778, 2007 WL 608268, at *1-2 (E.D.N.Y. Feb. 22, 2007), *aff'd*, 328 Fed. Appx. 20, 21 (2d Cir. 2009); *Feinstein v. Chase Manhattan Bank*, 06-CV-1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006); *Parra v. Greenpoint Mortgage Co.*, 01-CV-02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002), *aff'd*, 53 Fed. Appx. 164 (2d Cir. 2002).

12

This is precisely what is happening here.  Gunn is attempting to undermine the Delaware state court's foreclosure order by requesting this Court to "declare that the actions of fabricating note assignments to deprive one of his property is fraud and any judgments procured through such fraud is void ab initio" and to "issue a temporary restraining order as the defendants are actively engaged in the attempt to sell [his] home at half of its value in an effort to consummate fraud."   (Compl. at 4).  The *Rooker-Feldman* doctrine prohibits precisely such an effort to re-litigate in a federal court what has already been decided by a state court, and this Court should dismiss the Complaint for a lack of subject matter jurisdiction.[11]  Moreover, the dismissal should be with prejudice because there is no possible amendment that could vest this Court with jurisdiction over a lawsuit against Ambac concerning the foreclosure on the Property.

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE GUNN'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Even if the Court had subject matter jurisdiction to hear the claims, Gunn would be barred from bringing the claims due to the doctrine of collateral estoppel.  Under Delaware law,[12] the doctrine of collateral estoppel "prohibits a party from relitigating a factual issue that was previously adjudicated."  *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999).  To invoke the doctrine of collateral estoppel, a party must show that:

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally

---

[11] Nor does it make any difference that Gunn's complaint also refers to damages sought from the defendants given that the gravamen of his Complaint is that the state foreclosure action was decided improperly.  *Cf. Done v. Option One Mortgage*, 09-CV-4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) ("Although plaintiff has made a cursory reference to seeking monetary damages, it is abundantly clear that the whole purpose of this action is to undo the foreclosure judgment.  Therefore, *Rooker-Feldman* clearly applies.").

[12] The preclusive effect of state court judgments is determined by state law.  *See O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.") (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 (1984)); *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008) ("When 'determin[ing] the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state.'" (quoting *Conopco, Inc. v. Roll Int'l Corp.*, 231 F.3d 82, 87 (2d Cir. 2000)).

13

> adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Betts v. Townsends, Inc.,* 765 A.2d 531, 535 (Del. 2000) (citing *State v. Machin,* 642 A.2d 1235, 1239 (Del. Super. Ct. 1993)).

All four elements of collateral estoppel are satisfied here. First, by asking this Court to block the sale of the Property, Gunn necessarily seeks to relitigate the question of foreclosure, which is identical to the issue resolved in the Foreclosure Action. Second, the Delaware state courts have previously and finally ruled that the foreclosure was valid. This ruling was on the merits, as the court held that U.S. Bank was properly assigned the Johnsons' mortgage, that Gunn knew that he was buying a property with a first-lien mortgage, and that Gunn had actual knowledge that the first mortgage was in default. Third, Gunn litigated the Foreclosure Action and the Conversion Action extensively, on the merits, as a party or intervenor, and with his case heard by the Delaware Supreme Court on multiple occasions. Finally, Gunn had a full and fair opportunity to challenge the foreclosure, which he did in litigation for more than five years. Even toward the very end, the Delaware Supreme Court permitted Gunn to take discovery of U.S. Bank to prove his claim.

Gunn makes an attempt to retool his rejected state court claims in the instant action by bringing them against different defendants and masking them under different theories of liability. Gunn's attempt fails, though, because the crux of all his claims goes to validity of the Foreclosure Action. Moreover, Gunn's Conversion Action was dismissed in part because the Delaware state court determined that Gunn was collaterally estopped from challenging a foreclosure that he had tried and failed to block in the Foreclosure Action. Gunn is likewise estopped from bringing this new federal action. As with the *Rooker-Feldman* doctrine, there is

14

no reason to permit Gunn to replead to try to cure this deficiency, as collateral estoppel cannot be avoided through more artful pleading. The dismissal should be with prejudice.

**III.   GUNN'S CLAIMS OF CIVIL RICO, FRAUD AND CIVIL CONSPIRACY SHOULD ALSO BE DISMISSED AS TIME-BARRED**

The Complaint is devoid of any allegations about when Ambac engaged in any of the purportedly wrongful acts other than to make a single naked assertion that somehow the "events giving rise to [the] claim occur[red]" on "February 1, 2011." This allegation cannot be credited given that it is completely at odds with the public documents that discuss Ambac's role in the securitization transactions and the record of Gunn's state court lawsuits. Ambac issued its financial guarantee policies in 1998, more than 13 years ago, and the Foreclosure was filed in 2002, more than 9 years ago. All of these events are well beyond the applicable statutes of limitation for civil RICO, fraud and civil conspiracy. *See, e.g., Koch v. Christie's Int'l, PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011) ("Civil RICO claims are subject to a four-year statute of limitations."); *Puig v. Seminole Night Club, LLC*, C.A. No. 5495–VCN, 2011 WL 3275948, at *4 (Del. Ch. July 29, 2011) (fraud claims are subject to a three-year statute of limitations); *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989) (civil conspiracy claims are subject to a three-year statute of limitations). Accordingly, these three claims also should be dismissed as time-barred.

**IV.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

Even if the Court were to look past the fatal jurisdictional and issue preclusion defects of the Complaint, the Complaint still should be dismissed for failure to state a claim on which relief can be granted. Given the rather substantial and pervasive problems with this Complaint, the Court should dismiss it with prejudice and deny any leave to replead.

15

A.    **Legal Standard For Granting A Motion To Dismiss For Failure To State A Claim**

To withstand a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In assessing plausibility on a Rule 12(b)(6) motion to dismiss, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal*, 129 S. Ct. at 1950, "and draw[] all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). Moreover, a court deciding a motion to dismiss may take judicial notice of matters of public record. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (a court "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss); *LaFlamme v. Société Air France*, 702 F. Supp. 2d 136, 140 n.5 (E.D.N.Y. 2010) ("In accordance with the well-settled law of this Circuit, along with the Complaint, in deciding this Rule 12(b)(6) motion to dismiss, the court will consider those documents submitted by the parties which are matters of public record or which are deemed included in the Complaint.").

Although federal courts must construe *pro se* complaints liberally, *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009), "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Andino v.*

16

*Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010) ("While held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading requirements, and failure to plead the basic elements of a cause of action may result in dismissal.").

**B.      Gunn's RICO Claim Must Be Dismissed As Legally Insufficient And Factually Implausible**

Gunn makes the inflammatory charge that Ambac has engaged in racketeering without any evidence or legal basis. He attempts to concoct a purported "racketeering enterprise" involving money laundering and wire and mail fraud giving rise to a claim under 18 U.S.C. § 1964. Plaintiff alleges that "Ambac and its co-conspirators, U.S. Bank and Select Portfolio Servicing have created a racketeering enterprise that identifies dissolved trust[s] for the purpose of defrauding the IRS, original investors, and unsuspecting homeowners. The scheme involves misrepresenting to local courts that unqualified mortgages that are in default[] have been miraculously transferred into the dissolved trust." (Compl. at 3). Gunn also states, "[w]ithout the issuance of a restraining order, the defendants will have successfully executed a money laundering scheme, committed wire and mail fraud[.]" (Compl. at 4).

These fictional allegations are so unfounded that if Gunn were represented by counsel, Ambac would be well within its rights to seek sanctions under Rule 11 of the Federal Rules of Civil Procedure. Even a *pro se* litigant like Gunn is not permitted to hail a defendant into court for racketeering without any supporting factual allegations. This claim should be dismissed with prejudice.

1.      The Elements of Civil RICO

To state a civil RICO claim, a plaintiff must allege the following: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) causation of the injury by the violation of § 1962." *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101

F.3d 900, 904 (2d Cir. 1996). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (quoting *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)); *see also Spoto v. Herkimer County Trust*, No. 99-CV-1476, 2000 WL 533293, at *1 (N.D.N.Y. Apr. 27, 2000) ("the civil provisions of [RICO] . . . are the most misused statutes in the federal corpus of law").

Here, Gunn attempts to dress up his Complaint, the gravamen of which is to collaterally attack the Delaware Foreclosure Action, as an elaborate racketeering scheme. This is "exactly the type of bootstrapping use of RICO that the federal courts abhor." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003). The civil RICO claim must be dismissed because Gunn (1) lacks standing as he cannot allege a direct injury proximately caused by Ambac, (2) fails to allege a pattern of racketeering activity, and (3) fails to satisfy the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.

2.   Gunn's Civil RICO Claim Should Be Dismissed Because He Lacks Standing

A fundamental and fatal defect in Gunn's Complaint is that he lacks standing to assert a civil RICO claim. He has not credibly alleged, as he must, that the purported RICO violations were the proximate cause of his injury. *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) ("To satisfy RICO's standing requirements, a plaintiff must demonstrate . . . causation of the injury by the violation.") (citation omitted). Gunn is required to show "that a RICO offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). The Supreme Court has

18

repeatedly required dismissal of RICO claims alleging violations that relied on a theory of

causation that was, as a matter of law, simply too "attenuated." *Id.*

Applying these principles here, Gunn's RICO claim is far too attenuated as a

matter of law to survive a motion to dismiss. Plaintiff's injury "resulted from factors other than

[the defendants'] alleged acts of fraud." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459

(2006). The Property was foreclosed on because the previous owners defaulted on their

contractually-required mortgage loan payments, not because of any action (or inaction) on the

part of Ambac. Ambac had no direct involvement with the Property, Gunn, or the Foreclosure

Action. It merely provided insurance to the holders of the certificates issued by the EQCC

Trusts, one of which apparently held the mortgage at the time of the initiation of the Foreclosure

Action. It is impossible for Plaintiff to establish any causal relationship, let alone a "direct

causal connection" between the alleged "scheme" and his injuries, proximate cause is fatally

lacking, and so Gunn lacks standing to bring this claim. *Id.* at 460.

3.   Gunn's Civil RICO Claim Should Be Dismissed Because He Fails
      To Allege a Pattern of Racketeering Activity With The Requisite
      Particularity

The RICO statute requires that the alleged injury result from one of four specific

claims, each articulated in § 1962(a)-(d), involving racketeering and the collection of unlawful

debts. *See* 18 U.S.C. §§ 1962 & 1964(c). Gunn does not identify which section of the RICO

statute Ambac has allegedly violated. Nonetheless, an element common to each of the four

causes of action under the RICO statute is a "pattern of racketeering activity." *See id.*; *Spool v.*

*World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008).

A RICO complaint must aver a pattern of racketeering activities — *i.e.*, at least

two predicate offenses that are related and pose a threat of continued activity. *See* 18 U.S.C.

§1961(5); *see also Spool,* 520 F.3d 178, 183 (upholding dismissal of RICO claim for failure to

19

allege a pattern of racketeering activity, which requires "at least two acts of racketeering" activity and that the racketeering predicates be "related, *and* [either] amount to or pose a threat of continued criminal activity") (citations omitted).  Gunn's conclusory and unfounded assertion that Ambac has somehow engaged in a money laundering scheme and committed wire and mail fraud is insufficient to support a RICO claim.

Although allegations of money laundering may not be subject to Rule 9(b)'s particularity requirement, *see Leung v. Law,* 387 F. Supp. 2d 105, 119-20 (E.D.N.Y. 2005), the Complaint still must satisfy the notice-pleading requirements of Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See generally Casio Computer Co. v. Sayo,* No. 98 Civ. 3772, 2000 WL 1877516, at *16–17 (S.D.N.Y. Oct. 13, 2000) (a plaintiff "must plead all elements of the offense" in order to adequately plead money laundering as a predicate act under RICO and withstand motions to dismiss (citing *Bernstein v. Misk,* 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997))).  The Complaint here is devoid of any factual basis for its conclusory allegation that Ambac participated in a money laundering scheme.  Gunn never explains what acts Ambac took to commit money laundering, or whether the purported money laundering was promotional in nature or for the purpose of concealment (both of which are key issues in money laundering litigation). *See* 18 U.S.C. §§1956(a)(1(A)(i) & (B)(i); *see also United States v. Thorn,* 446 F.3d 378, 392 (2d Cir. 2006) (comparing concealment money laundering to promotion money laundering).  The purpose of Rule 8(a)(2) is to "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346 (2005).  Gunn's complaint "fails this simple test." *Id.*

20

Moreover, in a civil RICO action, "all allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). To assert a RICO claim based upon wire or mail fraud, a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Plaintiff "must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (internal quotations and citations omitted).

Nowhere in the Complaint are any of these facts pleaded with anything close to the level of particularity that is required in this context. For example, Gunn fails to identify which defendant caused an allegedly fraudulent statement to be spoken or mailed, what the content of the allegedly fraudulent statement was, or when, how and to whom the alleged communication was made. Plaintiff's allegations of wire and mail fraud are so conclusory and speculative that they fail to satisfy even the notice-pleading requirements of Rule 8(a), much less the heightened standards of Rule 9(b).

Without sufficiently pleaded predicate acts, Plaintiff's Complaint fails to allege the requisite pattern of racketeering necessary to sustain a RICO claim. *See, e.g., Mills*, 12 F.3d at 1176 (noting that the court's "conclusion that [plaintiffs] failed to satisfy Rule 9(b) demands as a corollary that these allegations cannot serve as predicate acts"); *Bernstein*, 948 F. Supp. at 239 ("Because the complaint does not delineate any of the specifics regarding the defendants' use of the mails, there can be no predicate act of mail fraud."). This pleading deficiency, standing alone, warrants dismissal of Plaintiff's RICO claim.

21

### C.     Gunn's Fraud Claim Must Be Dismissed

Gunn also alleges that Ambac "and its agents" (1) fraudulently "alleged that the previous owners of his home owed money to the two named trusts," and (2) "manufacture[d] and record[ed] documents into the land record for the purpose of defrauding [him] of [his] home through a fraudulent foreclosure." (Compl. at 3).  Plaintiff further alleges that (3) Defendants filed "a bogus deed" transferring his property out of his name and into a trust that never existed and (4) Ambac altered the dates of the trusts "to circumvent the IRS and the original investors of the 'real' trust." *Id.*

Under Delaware law, a plaintiff seeking to prove common law fraud must plead and prove five elements:  "1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).  As noted above, fraud allegations must be pleaded with particularity. *See supra* at 21; Fed. R. Civ. P. 9(b); *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

Gunn fails to allege properly the necessary elements and also does not satisfy the particularity requirement.  The short statement of facts speaks of a wild conspiracy, lasting for years, perpetrating extensive criminal activity.  But none of the allegations connect Ambac to the foreclosure that Gunn seeks to invalidate in a way that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949.  The Complaint is devoid of any explanation about when, where, or to whom Ambac made any false misrepresentations, or when or how Ambac supposedly manufactured and recorded a "bogus deed."  There is no plausible claim that Ambac induced Gunn to act or refrain

from acting, or that Gunn relied on Ambac's representations in taking some action. In short, the fraud claim is couched in insufficient and conclusory terms that provide no plausible basis for concluding that Ambac, an insurer of securities, had anything to do with the foreclosure. *See Iqbal*, 129 S. Ct. at 1949-52. For these reasons, the fraud claim should be dismissed with prejudice.

**D.      Gunn's Civil Conspiracy Claim Should Be Dismissed**

Gunn alleges that Ambac and its "co-conspirators," U.S. Bank and SPS, together "created a racketeering enterprise[.]" We address Gunn's civil RICO claim above. To the extent that Gunn is invoking the common law doctrine of civil conspiracy, such a claim also should be dismissed.

To plead a claim for civil conspiracy under Delaware law, a plaintiff must allege "an underlying wrongful act, such as a tort or statutory violation." *NACCO Indus., Inc. v. Applica Inc.,* 997 A.2d 1, 35 (Del. Ch. 2009); *see also Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. Super. Ct. 1998) ("[A] claim for civil conspiracy is not an independent cause of action in Delaware, . . . it must arise from some underlying wrong."). Gunn does not adequately allege any kind of wrongful act by Ambac. Far from Ambac having engaged in any wrongdoing, Delaware courts have concluded that it was Gunn who did not litigate in good faith but instead "us[ed] the courts to maneuver for advantage." *See Gunn I*, 2010 WL 705723, at *3. Moreover, the Delaware court also rejected Gunn's claim that U.S. Bank, one of Ambac's alleged "co-conspirators," engaged in any wrongdoing. *See id.* (describing U.S. Bank's "legitimate role as Plaintiff" and stating that the assignment of the mortgage to U.S. Bank was "properly recorded.")

In the absence of any independent tort, Gunn's civil conspiracy claim must be dismissed. *See Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 892-893 (Del. Ch. 2009) (dismissing plaintiff's civil conspiracy claim for failure to adequately allege the elements of the

23

5027825v.5

underlying wrong); *Transched Sys. Ltd. v. Versyss Transit Solutions, LLC,* No. Civ. A. 07C08286, 2008 WL 948307, at *4 (Del. Super. Ct. Apr. 2, 2008) (dismissing plaintiff's civil conspiracy claim because the underlying tort claim failed as a matter of law).

### E.     Plaintiff Fails To State a Claim For Malicious Prosecution

Finally, Gunn also may be attempting to allege a claim for malicious prosecution inasmuch as he suggests that Ambac somehow initiated the Foreclosure Action. To sustain a cause of action for malicious prosecution under Delaware law, the following five elements must be met: (1) the institution of civil proceedings, (2) without probable cause, (3) with malice, (4) termination of the proceedings in the aggrieved party's favor, and (5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury. *Nix v. Sawyer,* 466 A.2d 407, 411 (Del. Super. Ct. 1983); *Kaye v. Pantone, Inc.,* 395 A.2d 369, 372 (Del. Ch. 1978).

Gunn has not—and cannot—satisfy the key elements of a claim for malicious prosecution. Most obviously, Ambac did not institute the Foreclosure Action. This alone dooms any claim for malicious prosecution. That case was brought by U.S. Bank, the trustee for the securitization trust that held the Johnsons' mortgage. Moreover, U.S. Bank did not even initiate the Foreclosure Action against Gunn; the action was initiated against the Johnsons, and Gunn elected to intervene. The Conversion Action was an affirmative case filed by Gunn, making it impossible for Gunn to allege malicious prosecution arising out of this lawsuit. Equally fatal to Gunn's claim is the fact that neither of the Delaware actions terminated in Gunn's favor. Gunn lost both lawsuits.

In short, Gunn cannot sue Ambac for malicious prosecution over lawsuits that Ambac did not file (or have any involvement in) and that Gunn did not win. This claim, to the extent alleged, should also be dismissed with prejudice.

24

## CONCLUSION

For the foregoing reasons, Defendant Ambac respectfully requests that the Court grant its motion to dismiss Plaintiff's Complaint with prejudice.

Dated: November 16, 2011
      New York, New York

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
Robert P. LoBue (rplobue@pbwt.com)
Harry Sandick (hsandick@pbwt.com)
Melissa O'Neill (moneill@pbwt.com)
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

*Attorneys for Ambac Assurance Corporation*

5031877v.1