USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/26/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LA MAR GUNN,                                  :
                                              :
                    Plaintiff,                :
                                              :
          -v.-                                :
                                              :
AMBAC ASSURANCE CORPORATION;                  :
EQCC HOME EQUITY LOAN TRUST 1998-2            :
DATED 6.1.98 (CUSIP NO. 268917EN7); and       :
EQCC HOME EQUITY LOAN TRUST 1998-3,           :
DATED 9.1.98 (CUSIP NO. 268917EV9),           :
                                              :
                    Defendants.               :
------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

11 Civ. 5497 (PAC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul A. Crotty, United States District Judge:**

Plaintiff La Mar Gunn, who is proceeding pro se, has brought this action against Ambac

Assurance Corporation ("Ambac") and two securitization trusts, EQCC Home Equity Loan Trust

1998-2 dated 6.1.98 (Cusip No.: 268917EN7) and EQCC Home Equity Loan Trust 1998-3 dated

9.1.98 (Cusip No.: 268917EV9) ("the trusts").  Gunn alleges that defendants—as well as the

trustee for the trusts, U.S. Bank National Association ("U.S. Bank"), and its servicing agent,

Select Portfolio Servicing, Inc. ("SPS")—committed fraud and engaged in racketeering, which

led to the foreclosure of his Delaware home.  Ambac and SPS, on behalf of the trusts (together,

"Defendants"), have each moved to dismiss Gunn's complaint pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.  Defendants argue that:  (1) this Court lacks

subject-matter jurisdiction over the instant action under the Rooker-Feldman doctrine because

Delaware state courts have previously litigated and rejected the same claims Gunn now brings in

federal court; (2) Gunn's claims are barred by the doctrines of collateral estoppel and res

USDC SDNY
DATE SCANNED____ 6/26/12

judicata; (3) certain of Gunn's claims are time-barred; and (4) Gunn has failed to state a claim for fraud, racketeering, civil conspiracy, or malicious prosecution.  For the reasons that follow, I recommend that Ambac and SPS's motions to dismiss be GRANTED, Gunn's motion to amend DENIED, and the complaint be dismissed with prejudice.  Moreover, because dismissal would render moot several additional motions that Gunn has filed, I recommend that Gunn's outstanding motions be DENIED.

## I.  **Background**

The following facts and chronology of events are taken from the complaint as well as court documents from prior state court actions in Delaware.  This recitation is provided only to present the information necessary to understand the procedural posture of this case.  It is not intended to summarize all of the factual and legal issues before the Delaware state courts in the prior actions because such a presentation is not required to understand the Court's consideration of Defendants' motions to dismiss.

### A.  **Underlying Facts and Related Litigation**

#### 1.  **Gunn's Involvement with the Property and the Related Foreclosure Proceeding**

Gunn's claims concern the ownership of the residential property located at 201 Cornwell Drive, Bear, Delaware 19701 (the "Property"), and the proceeding to foreclose on the Property that began in 2002 ("the foreclosure proceeding").  Gunn's involvement with the Property has been discussed extensively by the Delaware state courts in the context of several prior actions including, and arising from, the foreclosure proceeding.  As these decisions have noted, the first relevant events occurred in 1997, when the owners of the Property, Leisa and Robert Johnson, took out a first mortgage from EquiCredit Corporation of Delaware ("EquiCredit DE") to secure a note for $235,000.  See, e.g., U.S. Bank Nat'l Assoc. v. Johnson, No. 02L-07-075 (FSS), 2010

2

WL 705723, at *1 (Del. Super. Ct. Feb. 25, 2010). In 1998, the Johnsons took out a second

mortgage from a different lender. Id. Gunn's claims arise from the first mortgage, on which the

Johnsons defaulted in 2001. Id.

According to documents submitted by SPS, EquiCredit DE assigned the first mortgage to

EquiCredit Corporation of America ("EquiCredit America") on December 1, 1997, and

EquiCredit America in turn assigned the mortgage to U.S. Bank as trustee for EQCC Home

Equity Loan Asset Backed Certificates, Series 1998-3 on the same day. (Declaration of Jessica

Priselac dated Jan. 20, 2012 ("Priselac Decl.") (Dkt. No. 39), Exhibit ("Ex.") 2 (Dkt. No. 39-2)).

The Delaware Superior Court, however, has observed that "[a]ccording to the parties, . . .

EquiCredit DE assigned its interest in the mortgage to a securitization trust, with U.S. Bank

acting as trustee" on September 30, 2002. 2010 WL 705723, at *1. This latter date is

corroborated by a document submitted by Gunn in a subsequent filing with the Court

(denominated as a "mandatory judicial notice and request for an evidentiary hearing"), namely a

copy of an Assignment of Mortgage from EquiCredit DE to U.S. Bank, which is dated

September 30, 2002 and which describes the Property. (Dkt. No. 48 at 16, Ex. E).[1]

Following the Johnsons' default, U.S. Bank commenced a foreclosure proceeding on July

19, 2002, and the Delaware Superior Court entered a default judgment of foreclosure on August

29, 2002. 2010 WL 705723, at *1. After U.S. Bank requested a writ of levari facias to satisfy

---

[1]     While Gunn characterizes these documents as "two contradictory note assignments"
(Complaint dated July 22, 2011 ("Compl.") § III.C (Dkt. No. 2)), Ambac acknowledges in its
memorandum of law that the Delaware Superior Court stated that the assignment to the trusts did
not occur until September 30, 2002, after U.S. Bank initiated the foreclosure proceeding on July
19, 2002, but claims the date of assignment is "irrelevant" to its motion given the findings of the
Delaware courts. (Defendant Ambac Assurance Corp.'s Memorandum of Law in Support of Its
Motion to Dismiss the Complaint dated Nov. 16, 2011 ("Ambac Mem."), at 3 n.3 (Dkt. No. 15)).

the default judgment in 2003, the Johnsons filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code, which stayed the pending sheriff's sale of the Property.  Id.

On December 16, 2003, despite "[k]nowing the loan was in default and in foreclosure," Gunn purchased the second mortgage and the Property by quitclaim deed, which he recorded on March 4, 2004.  Id.  He alleges that he thereafter made improvements on the Property, expending more than $200,000.  Id.[2]

In early 2004, the Johnsons' bankruptcy petition under Chapter 13 was dismissed and the stay of the sheriff's sale was lifted.  Id.  However, in June of 2004, the Johnsons filed for bankruptcy under Chapter 7 of the Bankruptcy Code, which again stayed the sheriff's sale.  Id. In October, 2004, after that stay was lifted, U.S. Bank again sought to proceed with the foreclosure and a sheriff's sale again was scheduled.  Id.  On November 9, 2004, Gunn moved to stay the sheriff's sale, asserting ownership of the Property and arguing that the assignment from EquiCredit DE to U.S. Bank was never recorded so that U.S. Bank did not have standing to bring the foreclosure proceeding.  Id.  The sale was stayed on December 14, 2004, and the assignment from EquiCredit DE to U.S. Bank was recorded on December 30, 2004.  Id.

Beginning in October, 2006 and throughout 2007 and 2008, U.S. Bank continued its efforts to proceed with the foreclosure and sheriff's sale, but the sale did not occur until December 9, 2008 because Gunn continued to challenge U.S. Bank's standing.  Id. at *1-2. Gunn moved to set aside the December 9, 2008 sale in January, 2009.  Id. at *2.  The Superior Court denied Gunn's motion, but permitted him to intervene in the foreclosure proceeding given that he had already participated in the litigation for several years.  Id.

---

[2]      In his complaint, Gunn alleges that he incurred as much as $383,000 "improving [his] homestead."  (Compl. § IV).

Gunn appealed the denial of his motion to set aside the sale, arguing that the Superior Court should have permitted him to take discovery concerning U.S. Bank's standing. Id. The Delaware Supreme Court agreed and remanded the action so that Gunn could conduct further discovery on the standing issue, specifically referring to Gunn's request to depose U.S. Bank. Id. Gunn, however, failed to conduct any discovery, instead choosing to submit additional documentary evidence disputing U.S. Bank's standing to initiate the foreclosure proceeding. Id. at *3.

On February 25, 2010, the Superior Court again found that U.S. Bank was the real party in interest to the foreclosure proceeding and the sheriff's sale was proper. Id. The court acknowledged that EquiCredit DE's assignment of its interest in the first mortgage to the trusts did not occur until after U.S. Bank initiated the foreclosure proceeding, but concluded that "the delay in filing the assignment has been legally insignificant since December 30, 2004[,]" the date the assignment was recorded. Id. It further noted that when Gunn purchased the Property and second mortgage, he "may not have known about the assignment" but "he knew he was buying a property with a first mortgage. (He also had actual notice that the note and mortgage were in serious default.)" Id. The Superior Court's decision was affirmed by the Delaware Supreme Court on June 30, 2010. Gunn v. U.S. Bank Nat'l Ass'n, 998 A.2d 850 (Table), 2010 WL 2606343, at *1 (Del. June 30, 2010).

On November 12, 2010, the Superior Court granted a writ of possession to U.S. Bank. (See Transcript of Rule to Show Cause Proceedings dated Nov. 12, 2010 ("Nov. 12 Hearing Tr."), at 6:14, attached as Ex. E to the Declaration of Melissa O'Neill dated Nov. 16, 2011 ("O'Neill Decl.") (Dkt. No. 14-5); see also Letter from Hon. Fred S. Silverman to La Mar Gunn and Margaret F. England, Esq. dated Nov. 12, 2010 ("Nov. 12 Ltr."), at 1, O'Neill Decl. Ex. F

(Dkt. No. 14-6)).  The Delaware Supreme Court affirmed on May 26, 2011.  Gunn v. U.S. Bank
Nat'l Assoc., 23 A.3d 865, 2011 WL 2090203, at *1-2 (Del. May 26, 2011).

On December 27, 2011, Gunn filed a "Motion to Vacate Final Judgment, Void Writ Of
Possession And Request An Evidentiary Hearing Based Upon Fraud On The Court" with the
Delaware Superior Court.  See U.S. Bank Nat. Ass'n v. Johnson, No. 02L-07-075, 2012 WL
1414085, at ¶ 6 (Del. Super. Ct. Mar. 21, 2012).  Despite Gunn's insistence that U.S. Bank, "the
Plaintiff in the foreclosure[,] did not have standing, and it obtained the foreclosure by fraud on
the court[,]" on March 21, 2012, the Superior Court denied the motion and determined that
"notwithstanding any problems with the original assignment documents, the paperwork was
correct before the sheriff's sale was authorized and, by the time of the sale, the loan was
seriously in default."  Id. at ¶¶ 6, 9.

### 2.  Additional Delaware Litigation

In addition to participating in the foreclosure proceeding, Gunn has brought several other
collateral actions related to the foreclosure proceeding, which, as noted above, are described only
for completeness because the parties make reference to them in the motion papers.  On April 13,
2009, Gunn filed an action against SPS and U.S. Bank in Delaware Superior Court alleging
breach of contract, fraud, bad faith banking practices, and violation of the Fair Debt Collection
Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA"), Gunn v.
Select Portfolio Servicing, Inc., No. 09C-04-102 (Del. Super. Ct.).  (See Complaint dated Apr.
13, 2009, O'Neill Decl. Ex. D (Dkt. No. 14-4)).  See also Gunn v. Select Portfolio Servicing,
Inc., 23 A.3d 865 (Table), 2011 WL 2362110, at ¶ 2 (Del. Sup. Ct. June 13, 2011).  On
November 12, 2010, in conjunction with its ruling granting a writ of possession to U.S. Bank in
the foreclosure proceeding, the Superior Court dismissed Gunn's action against SPS and U.S.

6

bank. The Superior Court determined that Gunn could not assert claims of bad faith banking, breach of contract, or claims under the FDCPA or RESPA because he was not a party to the original real estate transaction, and that there had been no conversion or fraud as a matter of law. (Nov. 12 Hearing Tr. at 3:14-19, 4:3-6, 4:14-5:1-10; see also 2011 WL 2362110, at ¶ 3). On June 13, 2011, the Delaware Supreme Court affirmed. The court concluded that Gunn's action was barred by the doctrine of res judicata because he had asserted "[t]he same basic claim" unsuccessfully in two prior appeals to the Supreme Court, and it noted that Gunn had not cited any legal or factual basis for reversal. 2011 WL 2362110, at ¶ 5 (citations omitted).

On October 21, 2010, Gunn filed a separate action against U.S. Bank in the Delaware Chancery Court, in which he alleged unjust enrichment and sought to vacate the sheriff's sale, Gunn v. U.S. Bank, No. 5917 (Del. Ch.). See Gunn v. U.S. Bank Nat. Ass'n, No. 475, 2011, 35 A.3d 419 (Table), 2011 WL 6009676, at ¶ 4 (Del. Dec. 1, 2011). Gunn argued that U.S. Bank did not have standing to bring the foreclosure proceeding and that the assignments transferring the Johnsons' first mortgage to it were invalid. Id. The Court of Chancery dismissed Gunn's claims because they had previously been decided against him. Id. On December 1, 2011, the Delaware Supreme Court affirmed the dismissal, finding that Gunn's claims were precluded under the doctrines of res judicata and collateral estoppel. Id. at ¶ 5 (citations omitted).

In November, 2011, Gunn filed an ejectment action against Ambac and the EQCC trusts, the named Defendants in this suit, in Delaware Superior Court. Gunn v. Ambac Assurance, No. 11C-11-128 (FSS), 2012 WL 1413988, at *1 (Del. Super. Ct. Mar. 21, 2012). According to the Superior Court, the "gist" of Gunn's allegations in that suit was, "in his words: 'defendants appear to have orchestrated a scheme that has laundered millions from unsuspecting Delaware homeowners, and without a valid assignment . . . to foreclose or make any assignment.'" Id.

7

(citation omitted and alterations in original). That action was dismissed on March 21, 2012. Id.
at *3. In addition to chronicling the years of litigation—which all resulted in the finding that
"any flaws in the foreclosure's timing and initial paperwork, including the challenged
assignment, had been cured"—the court also observed:

> Throughout the foreclosure, and now, Plaintiff has relied on challenges to the foreclosing
> bank's bona fides, and other accusations, rather than showing a defect in the mortgage,
> itself, or the loan's repayment.
>
> In short, at the bottom of the litigation in this court, the Court of Chancery, and the
> Supreme Court of Delaware are the unchallenged facts: No one besides Plaintiff has
> challenged the foreclosing bank and its assignee's standing; no one ever satisfied the
> delinquent loan; and, after more than seven years of litigation, the property was sold and
> the sale was confirmed. Plaintiff now has no title to the subject property.

Id. at *2.

Additionally, U.S. Bank and SPS have themselves filed a federal lawsuit against Gunn in
the District of Delaware asserting claims of trespass, conversion, unjust enrichment, tortious
interference with prospective business opportunities, slander of title, and abuse of process, U.S.
Bank Nat'l Assoc., et al. v. Gunn, No. 11 Civ. 1155 (RGA) (D. Del.). Although that case is
ongoing, the court has dismissed Gunn's counterclaims (id.; D. Del. Dkt. Nos. 23, 42); granted
U.S. Bank's motion to strike Gunn's counterclaims and his third-party claim against Ambac; and
granted injunctive relief that prohibits Gunn from contacting prospective buyers of the Property
or posting notices on the Property. U.S. Bank Nat'l Assoc. v. Gunn, No. 11 Civ. 1155 (RGA),
2012 WL 899550, at *5-6 (D. Del. Mar. 16, 2012). The court has also compelled Gunn to
respond to certain discovery requests and denied his motion for leave to amend his answer, a
motion for reconsideration, and a motion to dismiss or transfer. (See No. 11 Civ. 1155 (RGA)
(D. Del. Dkt. Nos. 55, 62, 63)).

Finally, SPS brought an action in Delaware Superior Court to cancel a lis pendens Gunn

had recorded on the Property, Select Portfolio Servicing, Inc. v. Kozikowski, No. N11M-11-080

(Del. Super. Ct.). On March 1, 2012, after SPS moved for default judgment, the action was

dismissed without prejudice and Gunn's motion to intervene and to dismiss was denied as moot.

(Letter from Hon. Fred S. Silverman to Francis G.X. Pileggi, Esq. and Jill Agro, Esq. dated Mar.

1, 2012, available at http://courts.delaware.gov/opinions/download.aspx?ID=171010).

### B. Procedural History of the Instant Action

#### 1. The Complaint

Proceeding pro se, Gunn filed the instant action on July 26, 2011. (See Dkt. Nos. 1-2).

As the Court reads the complaint, Gunn is asserting claims of fraud, racketeering, money

laundering, and wire and mail fraud. (Compl. §§ III.C and V). Gunn alleges that Defendants

committed various "illegal/fraudulent" actions as part of a "racketeering enterprise" or "scheme"

to "defraud[] the IRS, . . . investors, and unsuspecting homeowners[,]" along with "local courts."

(Compl. § III.C).

In the course of this scheme, Gunn claims that Defendants "manufactur[ed] and

record[ed] documents into the land record for the purpose of defrauding [him] of [his] home

through a fraudulent foreclosure." (Id.). More specifically, he alleges that Defendants "caused

an illegal/fraudulent mortgage note to be filed against [his] personal residence. The document is

a forgery and bares [sic] the signature of a widely known Robo-signer Nikole Shelton." (Id.).

This fraud, Gunn alleges, is evidenced by "two contradictory note assignments [that] have been

introduced as evidence . . . claiming to own the same loan." (Id.). Additionally, Gunn alleges

that "[t]he defendants have taken the illegal action of filing a bogus deed transferring [his]

property out of [his] name and into the name of a trust that doesn't exist today and has never

existed at any point." (Id. at § IV).  Gunn does not provide any additional detail to substantiate

these allegations, such as the identity of the trust which he contends does not exist.  Likewise,

despite stating that the trust "has never existed at any point" (id.), elsewhere in the complaint he

describes the trust as "dissolved" (id. at § III.C.) and asserts that "Ambac has slightly altered the

trust dates as to circumvent the IRS and the original investors of the 'real' trust" (id. at § IV),

both of which suggest that a trust did exist at some point.  Gunn also notes that he has "never

borrowed any money from the two trust[s] at bar." (Id. at § III.C).

　　　Finally, Gunn contends that he has "bona fide purchaser status" (id. at § IV), has "never

missed a mortgage payment, . . . ha[s] stellar credit, and pay[s] all of [his] bills on-time." (Id. at

§ III.C).  He claims that he and his family made the Property their home for eight years and

invested more than $383,000 in making improvements to it, but were "forced out onto the streets

with less than 24 hours to pack and move out" and "had to incur the expense of temporary

housing, exorbitant storage cost[s], and the exorbitant cost associated with relocating [his]

business." (Id.).

　　　On the basis of these allegations, Gunn seeks the following relief:  (1) a temporary

injunction "prohibiting the continued violation of New York trust laws"; (2) a declaratory

judgment that "the actions of fabricating note assignments to deprive one of his property is fraud

and any judgments procured through such fraud is void ad initio"; (3) a temporary restraining

order enjoining the sale of the Property; (4) compensatory damages in the amount of $520,000;

and (5) punitive damages "to punish the defendants for their conduct and to serve as a deterr[e]nt

to the future commission of such egregious acts of fraud." (Id. at § V).

### 2.   Ambac and SPS's Motions to Dismiss

On November 16, 2011, Ambac moved to dismiss Gunn's complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (See Notice of Motion dated Nov. 16, 2011 (Dkt. No. 13)).  Ambac's motion is premised on several grounds:  (1) the Court lacks subject-matter jurisdiction pursuant to the Rooker-Feldman doctrine; (2) Gunn's claims are barred by collateral estoppel; (3) Gunn's claims of racketeering, fraud, and civil conspiracy are time-barred; and (4) to the extent Gunn has asserted claims of racketeering, fraud, civil conspiracy, and malicious prosecution, they should be dismissed for failure to state a claim upon which relief can be granted.  (Ambac Mem. at 1, 10-24).  In support of its motion, Ambac submitted pleadings filed with, and decisions rendered by, the Delaware state courts in several of the actions concerning the Property, as well as the publicly-filed Prospectus Supplements for the defendant trusts.  (See O'Neill Decl. with exhibits).  Ambac asserts that these documents clarify its involvement with the Property was "limited" to "provid[ing] financial guarantee insurance for the benefit of the investors who bought securities that were issued by the two trusts named as co-defendants in this action." (Ambac Mem. at 9).  Ambac disclaims "any larger role" concerning the Property, including that it "did not originate the loan made to the Johnsons[,]" service that loan, serve as trustee for the two trusts, or have any "contact or dealings with the borrowers whose mortgages were owned by the EQCC Trusts, like the Johnsons."  (Ambac Mem. at 9-10).[3]

---

[3]      By letter to the Court dated March 8, 2012, counsel for Ambac requested the Court to take judicial notice of a brief that Gunn filed in opposition to Ambac's motion to dismiss in the Delaware lawsuit Gunn brought against Ambac, noted above.  (Letter from Harry Sandick to Hon. James L. Cott dated Mar. 8, 2012 ("Sandick Letter") (Dkt. No. 47)).  In that brief, Gunn makes reference to the instant action and the action pending in Delaware federal court, stating: "There are several pending actions that Ambac is aware of that collaterally attack the subject VOID judgments entered by the Superior Court of Delaware."  (See Ex. A to Sandick Letter at 6).  While Gunn apparently included this sentence to demonstrate that "Ambac misrepresents that Delaware courts have ruled that the foreclosure is valid" (id.), Ambac argues that it

On January 20, 2012, SPS, as servicing agent and attorney-in-fact for U.S. Bank, moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (See Dkt. No. 38).  The grounds for dismissal SPS asserts are identical to those relied on by Ambac, with one exception: SPS contends that Gunn's claims are barred by the doctrine of res judicata, in addition to the doctrine of collateral estoppel.  (Defendant Select Portfolio Servicing, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss dated Jan. 20, 2012 ("SPS Mem."), at 7, 10-15 (Dkt. No. 41)).

### 3.  Gunn's Opposition to the Motions to Dismiss

#### a.  Gunn's Opposition to Ambac's Motion to Dismiss

Gunn filed an opposition to Ambac's motion to dismiss that also seeks leave to amend his complaint.  ("Plaintiff La Mar Gunn's Motion for Leave to Amend and Add New Parties and Motion in Opposition to Ambac Assurance Corporation's Motion to Dismiss" dated Dec. 8, 2011 ("Gunn Mem. Opp. Ambac") (Dkt. No. 24)).  Two main factual allegations underscore Gunn's opposition to the motion.  First, he contends that "Ambac fully indemnified the certificateholders of EQCC Home Equity Loan Trust 1998-3 (Cusip No.: 2689917EV9)."  (Gunn Mem. Opp. Ambac at 2).  He argues that Ambac consequently "stood in the shoes of the certificateholders with all rights to income and it also became liable for any fraudulent activity perpetrated in the name of the trust."  (Id. at 10).  However, he notes that "Ambac is never included as a plaintiff in any of the fraudclosure [sic] cases, nor [is] [it] noticed as [a] part[y] of interest[,]" notwithstanding its "knowledge that SPS and U.S. Bank were submitting counterfeit assignments in the names of trusts that it had already indemnified" or its position as "an indispensable party and insurance subrogee."  (Id. at 4).

corroborates its claim that the instant action "is an improper collateral attack on a state court judgment."  (Sandick Letter at 1).

Second, Gunn reiterates his argument that, because the assignment of the first mortgage "was backdated to September 30, 2002, but was not recorded until December 8, 2004[,]" both "U.S. Bank and Ambac lacked standing" to initiate a foreclosure proceeding. (Id. at 2-3). He further alleges that when the foreclosure proceeding was commenced, "[n]o note was presented . . . although required[,]" and "[i]t was not until [he] challenged standing based on the public record[] that U.S. Bank instructed its foreclosure mill to prepare a counterfeit and or [sic] forged assignment of mortgage." (Id. at 10). The assignment, Gunn contends, occurred four years after the "trust cut-off date[,]" an act which he further argues is prohibited by New York law. (Id.).

Gunn also argues that each of the legal grounds for Ambac's motion to dismiss is meritless, beginning with two arguments as to why the Rooker-Feldman doctrine does not apply. First, he asserts that under the trusts' Pooling and Servicing Agreement ("PSA"), "any act performed by the trustee contrary to the PSA[] is automatically void." (Id. at 11). Second, he contends that "[t]he doctrine does not bar review of a state court action that was procured through fraud, deception, accident or mistake." (Id. at 12 (citing Resolute Ins. Co. v. State of N. Carolina, 397 F.2d 586, 589 (4th Cir. 1968))). Additionally, Gunn argues that U.S. Bank has committed the same wrongdoing in this case as was found in an unrelated case by the Massachusetts Supreme Court, which affirmed the denial of U.S. Bank's application for a declaration of clear title on certain property because the court determined that U.S. Bank was "not the original mortagee" and "failed to make the required showing that [it] w[as] the holder[] of the mortgage[] at the time of foreclosure." U.S. Bank v. Ibanez, 941 N.E.2d 40, 44 (Mass. 2011) (cited in Gunn Mem. Opp. Ambac at 12). Consequently, Gunn argues that U.S. Bank lacked standing under Article III of the Constitution to bring the foreclosure proceeding so that the Delaware courts did not have jurisdiction to adjudicate it. (Gunn Mem. Opp. Ambac at 12).

13

Additionally, Gunn disputes Ambac's arguments as to collateral estoppel, timeliness, and the plausibility of his claims. He argues that applying the doctrine of collateral estoppel here "would work an injustice as the earlier proceeding did not allow for a full and fair hearing on the issue in question in the current proceeding[,]" although he acknowledges that he "has active appeals seeking to void the judgments procured through fraud in the state court actions." (Id. at 17). As to the timeliness of his claims, Gunn contends that "the foreclosure was procured through egregious acts of fraud. There is no statute of limitations on fraud, as fraud voids everything *ab initio*." (Id. at 1, 18 (referring to "scam or artifice to defraud being employed by U.S. Bank, SPS, and Ambac")).

Finally, Gunn addresses the plausibility of his claims, referring to Fed. R. Civ. P. 10(c) and the definition of an equitable lien under New York law, and asking the Court to "take notice" of the following facts:

> Gunn was forced into a contract to purchase the bogus note and mortgage at a 20% premium for $335,000. The Defendants and their agents reneged on the signed contract after withholding Gunn's funds for nearly a year. Ambac reneged as it realized that it did not have the note i[t] was offering to sale [sic], nor did it have any interest in Gunn's property as was also later confirmed in a notice from the Federal Trade Commission to Ambac's agent SPS.

(Id. at 18-19).

### b.    Gunn's Opposition to SPS's Motion to Dismiss

Gunn opposed SPS's motion to dismiss in a submission entitled "Plaintiff's Motion in Opposition to Third-Party Notice of Motion to Dismiss and to Strike Third-Party Motion to Dismis[s] for Lack of Standing" ("Gunn Mem. Opp. SPS"). (Dkt. No. 45).[4] The basis of Gunn's opposition to SPS's motion to dismiss is that "[t]he Court lacks jurisdiction of the third-parties and can[]not entertain Motions by third-parties or those who have not sustained injury."

---

[4]    This submission is incorrectly dated February 3, 2011, instead of February 3, 2012.

(Id. at 2).  In response to counsel for SPS declaring that she represents U.S. Bank "solely as

Trustee for the Certificateholders of EQCC Home Equity Loan Asset Backed, Series 1998-3[,]"

Gunn contends "[t]his is an impossibility as the Certificateholders have all been paid and fully

indemnified by Ambac."  (Id. at 2).  He continues, "[t]he orders entered in favor of U.S. Bank

and SPS in Delaware[] did not include Ambac as an indispensable party, and were undeniably

procured through egregious acts of fraud.  Because fraud voids everything ab initio, [counsel for

SPS] and U.S. Bank as trustee for phantom certificateholders[] lack standing and cannot invoke

this Honorable Court's jurisdiction with its flurry of frivolous Motions."  (Id. at 3).  With his

opposition, Gunn provides copies of motions to set aside judgments that he apparently filed in

various Delaware state proceedings.  (Id., Ex. 1).

### 4.  Gunn's Additional Motions

Since Ambac and SPS moved to dismiss, Gunn has submitted multiple filings, several of

which are styled as "motions" and which seek various forms of relief.  In a "Motion to

Disqualify Counsel" dated November 29, 2011 (Dkt. No. 19), Gunn "moves to disqualify third-

party Defendant Select Portfolio Servicing, Inc. ('SPS') and the law firm of Eckert Seamans

Cherin & Mellott, LLC ('Eckert')[,]" which he contends "are attempting to interfere in the

instant action in an effort to conceal their felonious acts perpetuated in other courts."  (Id. at 1).

Gunn alleges that SPS and Eckert lack authority to defend the trusts because the "trusts were

terminated on December 15, 2005[,]" and "based on filings with the U.S. Securities and

Exchange Commission . . . SPS has never been the servicer for the above-captioned trusts."

(Id.).  Gunn also reiterates his arguments as to the fraudulent nature of the foreclosure

proceeding.  In opposition to this motion, SPS provides a copy of the Limited Power of Attorney

between U.S. Bank and SPS's predecessor to establish that it is the servicing agent and attorney-

15

in-fact for U.S. Bank.  (See Response to Motion to Disqualify Counsel dated Dec. 16, 2011 (Dkt. 20)).[5]

Additionally, as noted above, in his opposition to Ambac's motion to dismiss Gunn also moved for leave to amend and add new parties.  (See Dkt. No. 24).  Ambac opposes this motion, arguing that Gunn "fails completely to provide any details as to what claims or which parties he seeks to add" and that his "motion makes clear that any amended complaint merely would contain more incendiary, but blatantly false or entirely irrelevant allegations."  (Reply Memorandum of Law in Support of Defendant Ambac Assurance Corporation's Motion to Dismiss the Complaint and Opposition to Plaintiff's Motion for Leave to Amend and Add New Parties dated Jan. 5, 2012, at 2 (Dkt. No. 33)).  Likewise, SPS opposes Gunn's motion, arguing that any amendment to the complaint would be "futile" because it would raise issues that have already been litigated and rejected by the Delaware courts.  (Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend and Add New Parties dated Jan. 5, 2012, at 3 (Dkt. No. 31); see also Declaration of Jessica Priselac dated Jan. 5, 2012, with exhibits (Dkt. No. 30)).

Gunn has also filed a "Motion to Compel Defendant's and Third Party's Attorneys to Submit an Affidavit to this Court Stating Whether or Not They Are Representing the Holder in Due Course and the Certificateholders of the Subject Trust in this Matter," dated January 11, 2012 ("Motion to Compel").  (Dkt. No. 36).  Invoking Rule 1 of the Federal Rules of Civil Procedure, Gunn seeks a court order compelling "Defendants and third-party's attorneys" to submit "**affidavits signed under penalty of perjury by a party under the jurisdiction of this**

---

[5]      In addition to moving to disqualify SPS and Eckert, Gunn also filed a "Verified Motion to Show Cause Why Jessica Priselac Should Not Be Disqualified for Contempt and Fraud on the Court" dated Jan. 13, 2012.  (Dkt. No. 37).  SPS opposed the motion (see Dkt. No. 43), but Ms. Priselac later withdrew as counsel, "not in response [to] any motion by plaintiff to disqualify [her], but because she has left employment of Eckert."  (Notice of Withdrawal of Appearance dated Feb. 21, 2012 (Dkt. No. 46)).

**Court**, pursuant to *inter alia*, FRCP Rule 17(a) stipulating and admitting on and for the record: 1) whether or not they are representing the Holder in Due Course and the Certificateholders of the above subject trusts in this matter; 2) are not in actuality acting outside the authority granted by the Pooling and Servicing Agreement ('PSA'); 3) are in possession of the complete chain of legal and recorded assignments proving their rights to be before the Court." (Id. at 1 (emphasis in original)).

SPS opposes this motion on the same grounds as it opposes Gunn's Motion to Disqualify Counsel, namely that "Plaintiff is well-aware of the relationship between [SPS and U.S. Bank] based on his numerous previous legal actions against them[,]" and that "the Limited Power of Attorney previously submitted to the Court . . . as Document No. 20-1 and produced to Plaintiff in prior litigation" demonstrates that "SPS is the serving agent and attorney-in-fact for U.S. Bank National Association with regard to the Trusts." (Memorandum of Law in Opposition to Plaintiff's Motion to Compel dated Jan. 25, 2012, at 2 (Dkt. No. 42)). SPS also construes Gunn's motion as seeking to invoke the discovery provisions of the Federal Rules of Civil Procedure, and it argues that Gunn is in violation of Rule 26(d)(1) because he failed to confer under Rule 26(f) and failed to request an informal conference with the Court under Local Rule 37.2 prior to bringing the motion. (Id. at 2-3).

Finally, Gunn has filed a submission entitled "Mandatory Judicial Notice and Request for an Evidentiary Hearing" pursuant to Rule 9(b), dated March 8, 2012 (Dkt. No. 48). In this application, Gunn seeks an evidentiary hearing and provides notice to the Court that the Commonwealth of Pennsylvania Governor's Office of General Counsel has revoked the notary license of Nikole Shelton, who notarized the signature of Madeline Ramos, a Document Control Officer with EquiCredit DE, on the September 30, 2002 assignment of the first mortgage on the

17

Property.  (See id. at 1-2 & Ex. E).  In a letter to the Court dated March 22, 2012, Gunn reiterates

his request for an evidentiary hearing and—in response to a letter from Ambac's counsel to the

Court, dated March 20, 2012, which alerted the Court to recent litigation in the Delaware

courts—argued that Ambac and its counsel "have knowingly and willfully devised and intended

to devise a scheme and artifice to defraud investors."  (Letter from La Mar Gunn to Hon. James

L. Cott dated Mar. 22, 2012 (undocketed)).

## II. **Discussion**

### A. **Standard of Review**

When faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6), the

Court should "consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for

lack of subject matter jurisdiction, the accompanying defenses and objections become moot and

do not need to be determined." United States ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d

94, 102-03 (2d Cir. 2010) (internal quotation marks and citations omitted), rev'd and remanded

on alternative grounds, Schindler Elevator Corp. v. United States ex rel. Kirk, 131 S. Ct. 1885

(2011); see, e.g., Klein v. City of New York, No. 10 Civ. 9568 (PAE) (JLC), 2011 WL 5248169,

at *6 (S.D.N.Y. Oct. 28, 2011), adopted by 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012).

On a motion to dismiss pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack

of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional

power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing

Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." Id. (citation omitted). In considering

a motion brought under Rule 12(b)(1), a court accepts as true the factual allegations in the

complaint, but "jurisdiction must be shown affirmatively, and that showing is not made by

18

drawing from the pleadings inferences favorable to the party asserting it." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Shipping Fin. Servs. Corp v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)) (internal quotation marks omitted).  On a Rule 12(b)(1) motion, the Court may refer to evidence outside the pleadings.  See Makarova, 201 F.3d at 113 (citation omitted); see, e.g., Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002) (evaluating motion to dismiss for lack of subject matter jurisdiction under Rooker-Feldman by considering materials extrinsic to complaint) (citation omitted).[6]

Additionally, complaints prepared by pro se litigants like Gunn are held "to less stringent standards than formal pleadings drafted by lawyers." Peay v. Ajello, 470 F.3d 65, 67 (2d Cir. 2006) (internal quotation marks and citation omitted).  Because Gunn filed his complaint pro se, the Court must liberally construe it "to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted).  However, the Court need not accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citation and quotation marks omitted).  In addition, the fact that Gunn is proceeding pro se "does not exempt [him] from compliance with relevant rules of procedural and substantive law, Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation and quotation marks omitted), and he is "bound by the same rules of law, including preclusion law, as those [litigants] represented by counsel." Fertig v. HRA Med. Assistance Program, No. 10 Civ. 8191 (RPP), 2011 WL 1795235, at *4 (S.D.N.Y. May 6, 2011) (internal quotation marks and citation omitted).

---

[6]     To the extent the Court considers the affirmative defense of collateral estoppel as an alternative ground for dismissal below, it does so pursuant to Rule 12(b)(6).  See, e.g., Bd. of Managers of 195 Hudson Street Condo. v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 470-71 (S.D.N.Y. 2009).  In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in Gunn's favor. See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs. LLC, 568 F.3d 374, 381 (2d Cir. 2009) (citation omitted).

### B.  The Rooker-Feldman Doctrine

#### 1.  Legal Standard

Under the Rooker-Feldman doctrine, federal district courts may not exercise subject matter jurisdiction over actions that seek appellate review of state court judgments.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284-85 (2005) (citing Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), aff'd, Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)).  "'Underlying the Rooker-Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions.'"  Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)).  As a doctrine rooted in "comity," Rooker-Feldman "seeks to prevent 'state and federal courts . . . [from] fight[ing] each other for control of a particular case.'"  Kropelincki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) (quoting Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970)) (alterations in original).

Four requirements must be satisfied for the doctrine to divest a federal district court of subject matter jurisdiction:  (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must "complain[] of injuries caused by [a] state-court judgment"; (3) the plaintiff must "invite district court review and rejection of [that] judgment"; and (4) the state-court judgment must have been "rendered before the district court proceedings commenced."  Green, 585 F.3d at 101 (quoting Hoblock, 422 F.3d at 85 (quoting Exxon Mobil, 544 U.S. at 284)).  The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive."  Id. (citing Hoblock, 422 F.3d at 85).

### 2. Application to Gunn's Claims

"Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine." Done v. Wells Fargo Bank, N.A., No. 08 Civ. 3040 (JFB) (ETB), 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009) (citing Feinstein v. Chase Manhattan Bank, No. 06 Civ. 1512 (JFB) (ARL), 2006 WL 898076, at *2 (E.D.N.Y. Apr. 4, 2006) (collecting cases)); see also Ashby v. Polinsky, 328 F. App'x 20, 21 (2d Cir. 2009) (affirming dismissal on Rooker-Feldman grounds where plaintiff's "underlying injury . . . was the foreclosure on her property caused by the state court order" and "she filed her complaint after the state court order had been entered."); Garvin v. Bank of New York, 227 F. App'x 7, 8 (2d Cir. 2007); Webster v. Wells Fargo Bank, N.A., No. 08 Civ. 10145 (LAP), 2009 WL 5178654, at *5-6 (S.D.N.Y. Dec. 23, 2009) (citation omitted), aff'd sub nom. Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012); Kalamas v. Consumer Solutions Reo, LLC, No. 09 Civ. 5045 (SJF), 2010 WL 4811894, at *6 (E.D.N.Y. Nov. 17, 2010). None of Gunn's allegations or stated legal theories warrants a deviation from this well-settled rule.

The first requirement of Rooker-Feldman, that plaintiff lost in state court, is satisfied here. The foreclosure proceeding culminated with the Delaware Superior Court granting a writ of possession to U.S. Bank on November 12, 2010 (see Nov. 12 Hearing Tr. at 6:14; Nov. 12 Ltr. at 1), which the Delaware Supreme Court affirmed on May 26, 2011. 2011 WL 2090203, at ¶¶ 6-7. This writ "allow[ed] [U.S. Bank] to take possession of the property[,]" id. at ¶ 4, and marked the final point in the foreclosure proceeding after which Gunn could no longer assert a claim of ownership or possession, which constitutes a loss of his claims. Cf. Kalamas, 2010 WL 4811894, at *6 (first requirement of Rooker-Feldman satisfied where plaintiff "lost ownership and possession of the subject premises in the state courts").

The second requirement of <u>Rooker-Feldman</u>, that plaintiff complains about injuries caused by the state-court judgment, has also been met.  Gunn's stated injuries include the loss of his home of eight years and the funds he devoted to its improvements; the temporary housing expenses, storage fees, and relocation costs he incurred; and "the title to [his] property [being] slandered, clouded, and rendered unmarketable." (Compl. § IV).  Therefore, "the injur[ies] of which plaintiff[] complain[s] w[ere] caused by the state court order" granting the foreclosure, "not by an action of the defendants that the state court later ratified." <u>Quiroz v. U.S. Bank Nat'l Assoc.</u>, No. 10 Civ. 2485 (KAM) (JMA), 2011 WL 2471733, at *5 (E.D.N.Y. May 16, 2011) (citation omitted).  Put simply, the injuries Gunn enumerates were the direct result of the Delaware state courts granting U.S. Bank possession of the Property.

<u>Rooker-Feldman</u>'s third requirement concerning the nature of the relief sought has also been satisfied because Gunn has explicitly invited this Court to review and reject decisions of the Delaware state courts that were rendered in the course of the foreclosure proceeding.  In the "Relief" section of his complaint, Gunn asks the Court "to declare that the actions of fabricating note assignments to deprive one of his property is fraud and any judgments procured through such fraud [are] void." (Compl. § V).  This request echoes an allegation in the complaint's statement of facts, that "Ambac and others have reaped handsome rewards" for their fraudulent activities, which include "misrepresenting to local courts that unqualified mortgages . . . are in default." (<u>Id.</u> at § III.C).  Asking this Court to remedy the failings of the "local courts" falls squarely within the scope of review that the <u>Rooker-Feldman</u> doctrine prohibits, notwithstanding the allegation that those judgments were procured by fraud.  Cf. <u>Webster</u>, 2009 WL 5178654, at *6 ("[A]lthough Plaintiffs' legal theory sounds in fraud, the harm they seek to remedy is in fact the [state court's] judgment permitting foreclosure to proceed.  Plaintiffs invite review and

rejection of the foreclosure judgment because they ask this [federal] Court to hold that the subject mortgage is void based on fraud in the inducement.").[7]

Finally, the fourth requirement of <u>Rooker-Feldman</u>, that the state-court judgment was entered prior to the federal court suit, has also been satisfied. On November 12, 2010, the foreclosure proceeding was finally concluded when the Delaware Superior Court granted a writ of possession to U.S. Bank and deemed "the matter to be done as far as the Superior Court [wa]s concerned." (Nov. 12 Hearing Tr. at 6:14-17; <u>see also</u> Nov. 12 Ltr. at 1). The Delaware Supreme Court affirmed on May 26, 2011, <u>see</u> 2011 WL 2090203, at ¶¶ 6-7, nearly two months prior to Gunn bringing this action in July, 2011. As each of the requirements of <u>Rooker-Feldman</u> has thus been satisfied, the Court lacks subject-matter jurisdiction to consider Gunn's claims. I recommend dismissal of the complaint accordingly.

### C. Other Defenses as Grounds for Dismissal

As noted above, both Ambac and SPS raise several additional grounds for dismissal of Gunn's complaint. The Court need not reach those additional defenses to the action, having determined that <u>Rooker-Feldman</u> has divested it of jurisdiction. <u>See</u> <u>Amalgamated Cotton Garment & Allied Indus. Ret. Fund v. Youngworld Stores Group, Inc.</u>, No. 99 Civ. 3852 (RCC), 2001 WL 314650, at *2 (S.D.N.Y. Mar. 30, 2001) ("[D]ismissal of an action for lack of subject

---

[7]    As the Court in <u>Done</u> observed, "[s]uch actions are dismissed even when based on fraud, as [plaintiff] appears to . . . allege herein." <u>Done</u>, 2009 WL 2959619, at *3 n.6; <u>see also</u> <u>Parra v. Greenpoint Mortg. Co.</u>, No. 01 Civ. 2010 (DGT), 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [his] claims from the ambit of <u>Rooker-Feldman</u>") (quotation omitted); <u>see generally</u> <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 186-87 (2d Cir. 1999) (Circuit has "never recognized a blanket fraud exception to <u>Rooker-Feldman</u>"); <u>but see</u> <u>Forjone v. Federated Fin. Corp. of America</u>, 816 F. Supp. 142, 148, n.4 (N.D.N.Y. 2011) (noting that some courts have allowed plaintiffs claiming state-court judgment procured by fraud to escape <u>Rooker-Feldman</u> while other courts have disagreed) (collecting cases). Here, as is discussed below, even if <u>Rooker-Feldman</u> does not apply, Gunn is precluded on collateral estoppel grounds from litigating his fraud claim because he did so on multiple occasions in the Delaware courts.

matter jurisdiction will render all other accompanying defenses and motions moot.") (citing

United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1155-56 (2d

Cir. 1993)).  However, the Court considers briefly the applicability of collateral estoppel, which

both Ambac and SPS invoke as a separate basis for dismissal.  It does so as an alternative ground

for dismissal and only to the extent that Gunn's complaint could be construed to raise an

independent claim than that raised in the Delaware state proceedings, which warrants a

preclusion analysis rather than an analysis under Rooker-Feldman.  See McKithen v. Brown, 481

F.3d 89, 98 (2d Cir. 2007) ("Rooker-Feldman doctrine does not 'stop a district court from

exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court

a matter previously litigated in state court,' because '[i]f a federal plaintiff present[s] some

independent claim[, i.e., a claim based on an injury that was not caused by the state-court

judgment,] albeit one that denies a legal conclusion that a state court has reached in a case to

which he was a party . . . , then there is jurisdiction and state law determines whether the

defendant prevails under principles of preclusion') (quoting Exxon Mobil, 544 U.S. at 293)

(internal quotation marks omitted) (second alteration in original); see, e.g., Done, 2009 WL

2959619, at *3-4 (considering preclusive effect of state court proceedings as alternative ground

to dismissal under Rooker-Feldman).

 The preclusive effect of the Delaware state court proceedings is examined under

Delaware law.  See O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009) ("[A] federal court must

give to a state-court judgment the same preclusive effect as would be given that judgment under

the law of the State in which the judgment was rendered.") (quoting Migra v. Warren City Sch.

Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)); see Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008)

("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the

State in which the rendering court sits.") (citation omitted); <u>Schuh v. Druckman & Sinel, LLP</u>,

602 F. Supp. 2d 454, 468 (S.D.N.Y. 2008) ("[A] federal court must apply the rules of collateral

estoppel of the State in which the prior judgment was rendered.") (quoting <u>Sullivan v. Gagnier</u>,

225 F.3d 161, 166 (2d Cir. 2000).  Under Delaware law, "[c]ollateral estoppel precludes a party

from relitigating a fact issue that has previously been litigated and decided in a prior action

involving that party.  A claim will be collaterally estopped only if the same factual issue was

presented in both cases, the issue was litigated and decided in the first suit, and the determination

was essential to the prior judgment." <u>Smith v. Guest</u>, 16 A.3d 920, 934 (Del. 2011) (citations,

internal quotation marks, and alterations omitted).  "To trigger collateral estoppel, each of the

following four factors must be present:  '(1) the issue previously decided is identical with the one

presented in the action in question, (2) the prior action has been finally adjudicated on the merits,

(3) the party against whom the doctrine is invoked was a party or in privity with a party to the

prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair

opportunity to litigate the issue in the prior action.'" <u>Norman v. State</u>, 976 A.2d 843, 868 (Del.

2009) (quotation omitted).[8]  Each factor is present in this case.

The factual issue that Gunn has raised in his complaint, which is discussed in greater

detail in his papers opposing Defendants' motions to dismiss, is whether U.S. Bank was the

proper plaintiff to bring the foreclosure proceeding or whether its standing was predicated on

fraud.  This very same issue was raised numerous times in the foreclosure proceeding over the

---

[8]     To the extent Gunn argues that federal courts require "mutuality of estoppel," <u>see</u> Gunn
Mem. Opp. Ambac at 17 ("The law in Federal Courts requires both identity of parties and
mutuality of estoppel before collateral estoppel may be relied upon in an action."), he is
incorrect, first because it is State law and not federal law that applies, and second, Delaware law
does not require mutuality of estoppel.  See <u>Columbia Cas. Co. v. Playtex FP, Inc.</u>, 584 A.2d
1214, 1217 (Del. 1991) ("[M]any jurisdictions [including Delaware] no longer require that a
litigant have been a party in the prior litigation or in privity with a party in the prior litigation in
order to assert collateral estoppel.  It is sufficient that the party against whom collateral estoppel
is asserted was a previous party.").

course of a decade, from U.S. Bank first initiating the proceeding in July, 2002 to the Delaware Superior Court rejecting Gunn's attempt to reopen the matter in March, 2012. See 2012 WL 1414085, at ¶¶ 6, 9. The Delaware courts to confront the issue repeatedly held that U.S. Bank was the real party in interest and the sheriff's sale was proper—despite any delay in filing the assignment of the Johnsons' first mortgage from Equicredit DE to the trusts, see 2010 WL 705723, at *2-3—and that "there[] [was] no conversion" and "the right to foreclose has been established with respect to [the] fraud" claim. (Nov. 12 Hearing Tr. 4:14-15, 5:9-10). The fact that the issue was examined by the Delaware Supreme Court on five separate occasions in the context of the foreclosure proceeding and the additional litigation, see 2012 WL 1414085, at ¶ 10 & n.9, demonstrates that Gunn, against whom the doctrine is invoked, had a full and fair opportunity to litigate this issue on the merits. Therefore, even if Rooker-Feldman did not apply to the instant action, the doctrine of collateral estoppel bars Gunn from challenging the validity of the foreclosure generally or U.S. Bank's standing specifically. Consequently, I recommend that the action be dismissed on this ground as well.

### D.  Gunn's Motion to Amend the Complaint

Gunn requests leave to amend his complaint. It is well-settled that a district court must liberally construe a pro se complaint, and "should generally not dismiss [it] without granting the plaintiff leave to amend." Petway v. New York City Transit Auth., 2011 WL 6157000, at *1 (2d Cir. Dec. 13, 2011) (citation omitted). Nonetheless, "leave to amend is not necessary when it would be futile." Id.; see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (finding that leave to replead would be futile where complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that []he has inadequately or inartfully pleaded and that []he should therefore be given a chance to reframe").

26

In this case, leave to amend would be futile.  Gunn's complaint is entirely intertwined with the state court foreclosure proceeding, and a recasting of his claims or the addition of other parties would not change the gravamen of his complaint, which is to overturn the state court foreclosure proceeding, something over which this Court has no jurisdiction.  Accordingly, as courts resolving cases in similar postures have also concluded, providing an additional opportunity to amend at this juncture would be futile as it could neither cure the complaint's jurisdictional defects, nor overcome the consequences of collateral estoppel.  See, e.g., Formanek v. Pines, 69 F. App'x 504, 506 (2d Cir. 2003) (district court correctly denied, on futility grounds, plaintiff's motion to amend his complaint, as addition of party defendant would not cure complaint's jurisdictional defects under Rooker-Feldman); Castiglione v. Papa, No. 09 Civ. 0967 (LEK) (DRH), 2010 WL 2044688, at *13 (N.D.N.Y. May 24, 2010); Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 356 (E.D.N.Y. 2010).

### E.  Gunn's Additional Motions

As the Court lacks subject matter jurisdiction under Rooker-Feldman and Gunn's claims are otherwise barred by collateral estoppel, Gunn's remaining applications should be denied as moot.  See, e.g., Garvin, 227 F. App'x at 8-9 (affirming dismissal for lack of subject matter jurisdiction pursuant to Rooker-Feldman and denying pending motion to name additional defendants).

### III.   Conclusion

For the foregoing reasons, I recommend that the complaint be dismissed in its entirety.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See Thomas v. Arn, 474 U.S. 140, 154 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) (citing Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) and Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Plaintiff does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from Defendants' counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (noting that the Court may ask opposing counsel to provide to a pro se litigant copies of decisions that are available electronically).

Dated: New York, New York
       June 26, 2012

_____
JAMES L. COTT
United States Magistrate Judge

**Copies of this Report and Recommendation have been sent by ECF to counsel and by mail to**

La Mar Gunn
1894 Windswept Circle
Dover, DE 19901

28