```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LA MAR GUNN,                                    :
                                                :
                Plaintiff,                      :
                                                :        11 Civ. 5497 (PAC)(JLC)
        - against -                             :
                                                :        ORDER ADOPTING R&R
                                                :
AMBAC ASSURANCE CORPORATION;                    :
EQCC HOME EQUITY LOAN TRUST 1998-2              :
DATED 6.1.98 (CUSIP NO. 268917EN7); and         :
EQCC HOME EQUITY LOAN TRUST 1998-3,             :
DATED 9.1.98 (CUSIP NO. 268917EV9),             :
                                                :
                Defendants.                     :
----------------------------------------------------------------X
```

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: August 6, 2012

HONORABLE PAUL A. CROTTY, United States District Judge:

Pro se plaintiff La Mar Gunn ("Gunn") alleges that Ambac Assurance Corporation ("Ambac") and two securitization trusts, EQCC Home Equity Loan Trust 1998-2 dated 6.1.98 (Cusip No.: 268917EN7) and EQCC Home Equity Loan Trust 1998-3 dated 9.1.98 (Cusip No.: 268917EV9) ("the trusts"), along with the trustee for the two trusts, U.S. Bank National Association ("U.S. Bank"), and its servicing agent, Select Portfolio Servicing, Inc. ("SPS"), engaged in fraud and racketeering, leading to the foreclosure of his Delaware home.

On November 16, 2011 and January 20, 2012, Ambac and SPS[1] moved, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Gunn's complaint, arguing that: (1) the Court lacks subject-matter jurisdiction under the Rooker-Feldman doctrine; (2) Gunn's claims are barred by the doctrines of collateral estoppel and res judicata;[2] (3) some of Gunn's claims are time-barred; and (4) Gunn failed to state a claim for fraud, racketeering, civil conspiracy, or malicious prosecution. On December 8, 2011, Gunn filed an opposition brief, and sought leave to amend his complaint.

---

[1] SPS is acting in its role as servicing agent and attorney-in-fact for U.S. Bank.
[2] SPS alone raised the res judicata defense.

On June 26, 2012, Magistrate Judge James Cott issued his thorough and scholarly Report and Recommendation ("R&R"), recommending that the Court grant Ambac and SPS's motions to dismiss, deny Gunn's motion to amend his complaint, and dismiss the complaint with prejudice. On July 15, 2012, Gunn file objections to the R&R.

For the following reasons, the Court adopts the R&R in its entirety, GRANTS Defendants' motions to dismiss, and DENIES Gunn's motion to amend.

I.     Background[3]

In 1997, Leisa and Robert Johnson (the "Johnsons") obtained a $235,000 mortgage (the "first mortgage") on their residential property located at 210 Cornwell Drive, Bear, Delaware 19701 (the "Property"), from EquiCredit Corporation of Delaware ("EquiCredit DE"). In 1998, the Johnsons took out a second mortgage on the Property from a different lender. Either in 1997 or 2002, the first mortgage was assigned to U.S. Bank as trustee for an EQCC securitization trust. In 2001, the Johnsons defaulted on their first mortgage. On July 19, 2002, U.S. Bank commenced a foreclosure proceeding, and the Delaware Supreme Court entered a default judgment of foreclosure on August 29, 2002. On December 16, 2003, knowing that the first mortgage was in default and the Property in foreclosure, Gunn purchased the Property and the second mortgage by quitclaim deed, which he recorded on March 4, 2004.

The sheriff's sale of the Property was stayed twice while the Johnsons filed for bankruptcy, first under Chapter 13 in 2003, and then under Chapter 7 in 2004. In October 2004, after the bankruptcy stay was lifted, U.S. Bank sought to proceed with the foreclosure and sheriff's sale. In November 2004, Gunn moved to stay the sale, arguing that U.S. Bank lacked standing to bring the foreclosure proceeding because the assignment from EquiCredit DE to U.S. Bank was never recorded. The sale was stayed and the assignment recorded on December 30, 2004.

---

[3] All facts are taken from the R&R unless otherwise noted.

Beginning in October 2006, U.S. Bank again sought to proceed with the foreclosure and sheriff's sale, but the sale did not occur until December 9, 2008 because Gunn continued to challenge U.S. Bank's standing.  Gunn thereafter continued to challenge the validity of the sale.  On February 25, 2010, the Delaware Superior Court found that U.S. Bank was the real party in interest to the foreclosure proceedings and the sheriff's sale was proper.  The court acknowledged that EquiCredit DE's assignment of its interest in the first mortgage to the trusts did not occur until after U.S. Bank initiated the foreclosure proceedings, but concluded that the delay was "legally insignificant." On June 30, 2012, the Delaware Supreme Court affirmed this decision.

On November 12, 2010, the Superior Court granted a writ of possession to U.S. Bank; the Delaware Supreme Court affirmed the writ of possession on May 26, 2011.  On December 27, 2011, Gunn moved to vacate the final judgment and void the writ of possession, and requested an evidentiary hearing.  On March 21, 2012, the Superior Court denied Gunn's motion, again holding, that the "sheriffs sale was authorized and, by the time of the sale, the loan was in serious default."[4]

## II.     Instant Action

On July 26, 2011, Gunn instituted this action, alleging that as a part of a racketeering enterprise or scheme to defraud the IRS, investors, unsuspecting homeowners, and the Delaware courts the Defendants committed various illegal or fraudulent actions, including money laundering, wire fraud, and mail fraud.  Gunn argues that as a result of this scheme, the Defendants defrauded Gunn of his home.

---

[4] Magistrate Judge Cott set forth a detailed and comprehensive history of (1) Gunn's subsequent collateral actions in Delaware state courts relating to this foreclosure proceeding; and (2) U.S. Bank and SPS federal suit against Gunn for trespass, conversion, unjust enrichment, tortious interference with prospective business opportunities, slander of title, and abuse of process.  These proceedings have no bearing on this Court's order, and there is no need to recount the parties' tortured litigation history.

**III.     Magistrate Judge Cott's R&R**

   A.     <u>Subject Matter Jurisdiction:  Rooker-Feldman Doctrine</u>

Under the <u>Rooker-Feldman</u> doctrine, federal district courts are divested of subject matter jurisdiction over actions seeking appellate review of state court judgments.  See <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284-85 (2005).  The <u>Rooker-Feldman</u> doctrine applies where:  (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff invites the district court's review and rejection of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced.  <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005).  "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly banned by the <u>Rooker-Feldman</u> doctrine." <u>Done v. Wells Fargo Bank, N.A.</u>, No, 08 Civ. 3040 (JFB) (ETB), 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009) (citations omitted).

Magistrate Judge Cott found that all four elements of the <u>Rooker-Feldman</u> doctrine were satisfied here.  (R&R 21-23.)  First, Gunn lost in state court.  The Delaware courts granted U.S. Bank a writ of possession, which precluded Gunn's assertion of ownership or possession over the Property.  (R&R 21.)  Second, Gunn claimed in this action that his injuries included the loss of his home and related costs, which were "caused by the state court order" granting the foreclosure, "not by any action of the defendants that the state court later ratified." <u>Quiroz v. U.S. Bank Nat'l Assoc.</u>, No. 10 Civ. 2485(KAM)(JMA), 2011 WL 2471733, at *5 (E.D.N.Y. May 16, 2011).  Third, Gunn explicitly requests this Court to examine the Delaware state courts' decisions, and remedy their purported failings by declaring the state court judgments awarded to the Defendants' void.  (R&R 22.)[5]  Fourth

---

[5]  Gunn argues that the state court decisions should be declared void due to fraud.  The Second Circuit has "never recognized a blanket fraud exception to <u>Rooker-Feldman</u>." <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 186-87 (2d Cir. 1999).  While many courts have dismissed challenges to a state court's decision under the <u>Rocker-Feldman</u> doctrine even when plaintiff alleges that the judgment was procured by fraud, other courts have allowed such challenges to proceed.  (See R&R 23 n. 7 (collecting cases).)  Magistrate Judge

4

and finally, the Delaware Superior Court granted a writ of possession to U.S. Bank on November 12, 2010, and the Supreme Court affirmed this decision on May 26, 2011, which was approximately two months before Gunn instituted this action on July 22, 2011.  (R&R 23.)  Having found that each of the Rooker-Feldman elements was satisfied, Magistrate Judge Cott recommended that the Court dismiss Gunn's complaint in its entirety.

  B.  Collateral Estoppel

Alternatively, Magistrate Judge Cott recommended that the Court dismiss Gunn's claims under the doctrine of collateral estoppel, which precludes a party from relitigating a factual issue that had been previously litigated and decided in a prior action, to which they were a party.  See Smith v. Guest, 16 A.3d 920, 934 (Del. 2011).[6]  Collateral estoppel is available when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised has a full and fair opportunity to litigate the issue in the prior action.

Norman v. State, 976 A.2d 843, 868 (Del. 2009) (quotation and citation omitted).[7]

Magistrate Judge Cott found that each element was present here.  In his complaint, Gunn challenges U.S. Bank's standing to bring the foreclosure proceeding, and asserts its standing was based on fraud.  (R&R 25.)  Gunn raised the same issue numerous times in his litigations "over the course of a decade" in Delaware state courts.  (R&R 25-26.)  The Delaware courts adjudicated this issue on the merits, and repeatedly held that U.S. Bank was the real party in interest, the sheriff's sale was proper, "there[] [was] no conversion," and "the right to foreclose ha[d] been established with

---

Cott recommends that the Court find that the Rooker-Feldman doctrine divests this Court of subject matter jurisdiction despite Gunn's allegations of fraud.  In the alternative, he recommends that the Court dismiss Gunn's claims as barred by the doctrine of collateral estoppel.  See infra, Section III .B.

[6] When sitting in diversity, the preclusive effect of a state court proceeding is examined under that state's law.  See Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008).

[7] As Delaware law does not require mutuality of estoppel, see Columbia Cas. Co. v. Playtex FP, Inc., 584 A.2d 1214, 1217(Del. 1991), Gunn's argument to the contrary is without merit.  (R&R 25 n.8.)

respect to [the] fraud' claim. (R&R 26; see U.S. Bank Nat'l Assoc. v. Johnson, No. 02L-07-075 (FSS), 2010 WL 705723, at *2-3 (Del. Super. Ct. Feb. 25, 2010).) Finally, given that the Delaware Supreme Court reviewed this issue on five separate occasions, Gunn clearly had a full and fair opportunity to litigate this issue on the merits. (R&R 26.)

Accordingly, Magistrate Judge Cott found that even if the Rooker-Feldman doctrine did not apply, "the doctrine of collateral estoppel bars Gunn from challenging the validity of the foreclosure generally or U.S. Bank's standing specifically." (Id.)

    C.    Motion to Amend the Complaint

A pro se complaint should be liberally construed, and generally should not be dismissed by a district court without granting the plaintiff leave to amend. Petway v. New York City Transit Auth., 450 Fed. App'x 66, 67 (2d Cir. 2011). Granting leave to amend, however, "is not necessary when it would be futile." Id.

Magistrate Judge Cott determined that granting Gunn leave to recast his claims or add other parties "would not change the gravamen of his complaint, which is to overturn the state court foreclosure proceeding, something over which this Court has no jurisdiction." (R&R 27.) Accordingly, Magistrate Judge Cott recommended that the Court deny Gunn's application, as any amendment would be futile.

    D.    Additional Motions

Since the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine, and that Gunn's claims are otherwise barred by the doctrine of collateral estoppel, Magistrate Judge Cott recommended that the Court terminate all pending motions and applications as moot. See, e.g., Garvin v. Bank of New York, 227 F. App'x 7, 8-9 (2d Cir. 2007) (affirming dismissal for lack of

subject matter jurisdiction pursuant to Rooker-Feldman and denying pending motion to name additional defendants.)[8]

## IV. Discussion

In reviewing a report and recommendation, a court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a party makes a timely "specific written objection," the district court is obligated to review the contested issues *de novo*. Greene v. WCI Holdings Corp., 956 F. Supp 509, 513 (S.D.N.Y. 1997). "The district court may adopt those portions of the report to which no timely objection has been made, so long as there is no clear error on the face of the record." Feehan v. Feehan, No. 09 Civ. 7016, 2011 WL 497776 at *1 (S.D.N.Y. Feb. 10, 2011).

### A. Objections

On July 15, 2012, Gunn file objections to the R&R, arguing that: (1) the R&R failed to address that Delaware state courts lacked personal and subject matter jurisdiction over the prior actions; (2) the Delaware state courts' decisions were procured through fraud; (3) Ambac and SPS lack standing; and (4) the R&R incorrectly stated that the Johnson's defaulted in 2001.

Gunn's jurisdictional attack on the state court judgments is without merit, as "no exception to the Rooker/Feldman doctrine exists when there is a challenge to the state court's personal jurisdiction or subject matter jurisdiction." In re Salem, 290 B.R. 479, 483 (S.D.N.Y.2003); Callahan v. Callahan, No. 1:10-cv-141-jgm, 2011 WL 2005388, at *5 (D.Vt. May 23, 2011).

---

[8] These motions include: Gunn's motion to disqualify SPS and the law firm of Eckert Seamans Cherin & Melliot, LLC ("Eckert") on the ground that they lack the authority to defend the trust; Gunn's motion to compel Defendants and third-party counsel to submit affidavits stating whether they have standing before the Court, are acting within the Pooling and Servicing Agreement, and have the documentation to prove their standing; and Gunn's request for an evidentiary hearing under Rule 9(b).

Gunn argues that the Delaware state courts' decisions were procured by fraud because a notary involved in the mortgage assignment "was found guilty of egregious violations of Pennsylvania Notary Laws." (Objections 4-5.) Many courts have held that "[t]he fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove [his] claims from the ambit of Rooker-Feldman." Smith v. Weinberger, 994 F.Supp. 418, 424 (E.D.N.Y.1998) (dismissing a challenge to a state court foreclosure proceeding based on the Rooker-Feldman doctrine); Done v. Wells Fargo Bank, N.A., No. 08 Civ. 3040 (JFB)(ETB), 2009 WL 2959619, at *3 n.6 (E.D.N.Y. Sept. 14, 2009) (same); Parra v. Greenpoint Mortgage Co., No. 01 Civ.2010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) (same); Dockery v. Cullen & Dyckman, 90 F.Supp.2d 233, 236 (E.D.N.Y. 2000) (same); Drew v. Chase Manhattan Bank, N.A., No. 95 Civ. 3133, 1998 WL 430549, at *6 (S.D.N.Y. July 30,1998) (same). Gunn's factual allegations are similar to those presented in Smith, Done, Parra, Dockery, and Drew, and are similarly foreclosed by the Rooker-Feldman doctrine.

The Court nonetheless recognizes that some courts have declined to apply the Rooker-Feldman doctrine where a plaintiff alleges that his injury was caused by the defendants' "perjury, fraud and misrepresentations" in procuring the judgment, rather than an incorrect court opinion. See, e.g., Marshall v. Grant, 521 F.Supp.2d 240, 244-45 (E.D.N.Y. 2007). Accordingly, in the alternative, the Court finds that the doctrine of collateral estoppel bars Gunn's claims, as all four elements to a collateral estoppel defense are present here.[9] First, the issues presented here—including U.S. Bank's standing and the possibility that it "obtained the foreclosure by fraud on the court"—were raised in the prior Delaware state court actions. See U.S. Bank Nat. Ass'n v. Johnson, 2012 WL 1414085, at *1 (recounting prior actions). Second, the Delaware courts adjudicated these issues on the merits and repeatedly held that U.S. Bank was the real party in interest, the mortgage assignment was not

---

[9] The elements to a collateral estoppel defense are listed supra, at 5.

fraudulent, and "the loan was seriously in default." Id.  Third, Gunn was a party to all the prior state court actions.  Fourth and finally, as the "dispute has already been reviewed by the [Delaware] Supreme Court five times," id., Gunn clearly had a full and fair opportunity to litigate these issues.  Accordingly, Gunn's claims are barred by the doctrine of collateral estoppel.

Having found that the Court is divested of subject matter jurisdiction under the Rooker-Feldman doctrine, and that Gunn's claims are otherwise barred by the doctrine of collateral estoppel, the Court will not consider Gunn's objection regarding Defendants' standing.

Finally, Gunn challenges the R&R's factual recitation that the Johnson's defaulted on their mortgage in 2001.  This fact was derived from the underlying action: U.S. Bank Nat. Ass'n v. Johnson, C.A. No. 02L-07-075 FSS, 2010 WL 705723, at *1 (Del. Super. Ct. Feb. 25, 2010).  Gunn provides no argument or basis to believe that this fact is incorrect.  Rather, Gunn appears to have raised this objection to again note that the mortgage assignment occurred after the default.  The Delaware Superior Court, however, already determined that the late assignment was "legally insignificant." Id. at * 3.  Accordingly, Gunn's final objection is without merit.

The Court has reviewed all other portions of the R&R for clear error and finds none.  Accordingly, the Court adopts the R&R in its entirety.

**V.    Conclusion**

The Court GRANTS Defendants' motions to dismiss with prejudice, and DENIES Gunn's motion to amend.  The Clerk of Court is directed to terminate all pending motions and close this case.

Pursuant to 28 U.S.C § 1915(a), I find that any appeal from this order would not be taken in good faith.

Dated: New York, New York
August 6, 2012

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

Copies Mailed To:

La Mar Gunn
1894 Windswept Circle
Dover, DE 19901

10